Hillsborough,
Mar. 5, 1946. } No. 3555.

THOMAS THIBEAULT *v.* MANCHESTER SHOE MFG. CO.

SAME *v.* LOUIS H. SALVAGE SHOE CO.

54

*Chretien & Craig* (*Mr. Craig* orally), for the plaintiff.

*Maurice F. Devine* and *Joseph A. Millimet* (*Mr. Millimet* orally), for defendant Manchester Shoe Co.

*Alvin A. Lucier* (by brief and orally), for defendant Salvage Shoe Co.

BURQUE, J. The accident happened February 3, 1940, sometime after 9:30 p. m. Plaintiff's claim at the trial was that he fell on ice that had formed in the gutter on the east side of the street. In his deposition, taken a year before the trial, he claimed he fell on what he referred to as a sidewalk adjacent to defendants' buildings, not being too specific as to whether it was in front of the building occupied by the Salvage company or building occupied by the Manchester company. His specific allegation is that the ice was formed as the result of steam or water, or both, coming out of an underground pipe connected with the Manchester company's boiler room with an outlet near the street gutter. In view of this it is difficult to perceive how the ice could have been formed on the would-be sidewalk, which was nothing but a cinder path, and was a private and not a public walk.

Right here we may proceed to consideration of the relationship of the two defendants. The Manchester company had leased a four-story building to the Salvage company. One of the covenants in the lease was to the effect that the owner was to provide the lessee with

heat, make all necessary interior and exterior repairs to the building, and furnish watchmen. The boiler room was located between the leased building and another building of the lessor. The photographs introduced as exhibits would seem to indicate the buildings were connected by the boiler room. The lessee had no control over the operation of the boiler. This was entirely attended to by the employees of the lessor. Nor did the lessee have any control of the boiler room. It is our conclusion that the Salvage company could not therefore be held responsible for any ice that may have been formed by reason of steam escaping from the exhaust pipe connected with the boiler room, if such was the fact. No other cause being advanced for the formation of the ice, a directed verdict in favor of the Salvage company should have been ordered.

It remains to be considered whether there is any responsibility on the part of the other defendant. Plaintiff undertakes to testify that he passed the premises almost every evening, at about the same time, upon returning from his club to his home; that repeatedly he thinks he saw steam escaping from the pipe in question; that there would be water where he fell; that the ice was in the vicinity of the end of the pipe, and that the water that caused its formation "had to come from somewhere." He testifies that he saw steam and water coming out of this exhaust pipe "occasionally" during the year prior to his accident,—probably two or three times a week. He did not see any the day of the accident, and when asked if he had seen any since the accident he said, "I might have noticed . . . I imagine I did . . . Yes, I did." In his deposition he said there was ice all over the sidewalk from the boiler room to the street, all over the place, a large spot of ice. When pressed on this point, he said by sidewalk he meant the road, the street, the gutter. He also claimed in his deposition that he fell on the sidewalk, while at the trial he claims definitely he was walking in the street, in the gutter, and that he slipped on a piece of ice three or four feet in diameter, in the gutter. As part of his case plaintiff introduced an employee of the Salvage company who testified that the pipe in question had been disconnected from the boiler some eight years prior to the accident, that it was a dead-end pipe and that no steam could come from it. This testimony is uncontradicted, except for plaintiff's statements referred to above, and probably the additional evidence that since the accident "there is still water occasionally around there." It appears further that water might come out of the pipe in the event the boiler room became flooded. But there is no evidence that the boiler room was ever

known to have become flooded so as to produce the result claimed. True it is that the jury did not have to believe the testimony that the pipe was disconnected. Disbelief however of this testimony did not supply the necessity of proof that the pipe was connected. *Coleman* v. *Stacy*, 91 N. H. 60, 62; *Brickell* v. *Company*, 93 N. H. 140, 144. Plaintiff having seen fit to introduce this evidence of disconnection, some duty was then imposed upon him to introduce some evidence to establish the contrary. His testimony already referred to is not sufficient to overcome the requirement. It is at best only a scintilla of evidence, and throws the case in the realm of guess and conjecture. It is extremely doubtful if a fair, logical inference can be drawn therefrom; *i.e.*, that steam or water did come from the pipe and caused the formation of the ice complained of. There is no substantial evidence to sustain plaintiff's claim. "Without any substantial evidence to support it according to the plaintiff's views of the evidence, the verdict may have been the result of mere conjecture. . . . " *Kingsbury* v. *Railroad*, 79 N. H. 203, 205. In the absence of a complete elimination of all other causes, (there being no evidence of the condition of the weather and temperature for five days prior to the date of the accident), the state of proof is such that the burden imposed upon the plaintiff to satisfy reasonable men by a fair amount of substantial evidence, that the ice complained of could have been and probably was formed by steam or water coming out of the pipe, (which no one saw the day of the accident), cannot be said to have been sustained. Plaintiff's testimony that he "might" have seen steam or water there the day before "is not the kind of proof which the law requires." *Wessman* v. *Railroad*, 84 N. H. 475, 482. It is also said in that opinion (*p.* 481) "the fact that this witness, while disclaiming any knowledge as to leaky gutters, or the actual cause of the ice, also disclaimed knowledge of other possible causes besides the one suggested by counsel, did not justify a conclusion that there was no other source from which water could have come."

*Judgments for the defendants.*

All concurred.