Strafford,
Jan. 6, 1948. } No. 3689.

SADIE WEBBER *v*. CLARE H. PHIPPS  & *a*.

*William H. Sleeper* (by brief and orally), for the plaintiff.

*James M. Jackson* (by brief and orally), for the defendant Phipps.

*Hughes & Burns*, for the defendant Kretsepis, filed no brief.

DUNCAN, J. From the evidence, the following facts could be found. The plaintiff was injured at Dover on December 28, 1944, while a passenger in the defendant's automobile. She had been acquainted with the defendant for twenty-two years. The plaintiff, her husband, and the defendant Phipps were all in the employ of the Portsmouth Navy Yard. Before the accident it was the plaintiff's practice to ride back and forth to work with the defendant. He was accustomed to call at her house, and when the accident occurred was taking her to visit a relative. His automobile collided with another operated by the defendant Kretsepis. According to Phipps the Kretsepis automobile skidded into his. The defendant Kretsepis claimed that the accident occurred when Phipps undertook to pass a parked vehicle.

The plaintiff struck her head against the windshield, sustaining a cut over her right eye, injury to her hip, and to the muscles of her neck, and breaking some artificial teeth. Thereafter she suffered for some time from headaches, dizziness, emotional instability, loss of memory, and inability to concentrate, manifestations described as usual after a concussion. She was unable to resume work for five weeks.

The covenant was executed on January 3, 1945. The defendant called for the plaintiff at her home after he returned from work that day, and took her by automobile to the dentist's office. While she was there, he conferred with his insurance company adjuster at the office of a local agent. So that the adjuster might talk with the plaintiff, the defendant took him to the automobile, where she was waiting. The conference which ensued lasted for about a half an hour, during which time the adjuster did most of the talking. The plaintiff was nervous, crying, and confused. She had had no in-

dependent advice concerning her rights. When the adjuster suggested that he wished to obtain her husband's signature, she requested him not to interview him, because it was "none of her husband's business." The adjuster explained that the covenant was to protect the defendant, and that the other party was to blame. He finally drafted a covenant not to sue, for the plaintiff to sign. The plaintiff asked the defendant if it was all right for her to sign it, and he told her, "yes, according to the [adjuster's] explanation." She thereupon signed the covenant without having read it. She was paid no money, and was offered none, but two days later a check for one dollar was mailed to her.

There was no error in the denial of the defendant's motion for a nonsuit or in submission of the issue of undue influence to the jury. "To justify [a finding] of undue influence . . . it must appear that the influence charged amounts 'to force and coercion, destroying free agency. . . .' " *Bartlett* v. *McKay*, 80 N. H. 574. "The use of the term coercion is not meant to limit undue influence to physical force or threats of physical force. Any pressure upon [the] mind which over-powers it, is coercion in this sense." 1 Page, Wills (Lifetime *ed.*), *s.* 183. Persuasion which affords no opportunity for judgment to be competently and freely exercised, is unfair; and may be found to constitute undue influence when exerted upon one justified by his relation with the persuader in assuming that the latter will not counsel action opposed to his welfare. Restatement, Contracts, *s.* 497, and *comment; Commercial Merchants Bank* v. *Kloth*, 360 Ill. 294. Essentially, the question is whether there was evidence that the plaintiff's free agency was destroyed by the conduct of the defendant and his representative. *Bartlett* v. *McKay, supra;* 5 Williston, Contracts (Rev. *ed.*), *ss.* 1625, 1625A; 4 Tiffany, Real Property, *s.* 988; 2 Black, Rescission and Cancellation (2d *ed.*), *s.* 237.

It could be found upon the evidence that when the plaintiff signed the covenant, her health and state of mind were such that she was more susceptible to influence than a person in normal health would have been (see *Harvey* v. *Provandie*, 83 N. H. 236, 240), and that, reposing confidence in the defendant, she executed the covenant upon his advice, which in effect adopted the statement of the adjuster concerning its effect. The interview with the plaintiff was conducted under the defendant's auspices. The jury could find that it consisted principally of discourse by the adjuster calculated to obtain the plaintiff's agreement that the defendant was not to blame. Belief of the adjuster's testimony concerning the plaintiff's part in the dis-

cussion was not required, and her inability to recall what was said could be found attributable to her condition at the time of the interview. "They gave me something to sign and I was too confused, I just signed it. I didn't know what it was." From the defendant's testimony, it appeared that the plaintiff signed the covenant because given to understand merely that it would protect him. The adjuster conceded that her signature was ("in a business way") "what he was after." Taking the evidence as a whole, it was not beyond reason for the jury to conclude that the covenant was the product of the will of those who obtained it, rather than of the plaintiff who gave it.

The influence of the defendant's presence and advice was used for his own benefit. Whether the claim which the plaintiff may have had against him was of substantial value does not appear; but it might reasonably be found that its value for purposes of avoiding litigation was more than she received, and that the consideration was inadequate.

Since the jury might properly find in the transaction elements of unfair advantage, and that confidence was reposed in the defendant by the plaintiff, this court is not disposed to hold as a matter of law that there was no evidence of undue influence for the jury, regardless of how the court might decide the question of fact were it called upon to do so. While the plaintiff might be found to have acted from friendship or affection, such a finding was not compelled. Construing the evidence most favorably to the plaintiff, the covenant could be found the result of imposition, rather than the plaintiff's free will. *Bartlett* v. *McKay*, *supra*. If the defendant did not wittingly seek to take advantage, the result of what was done was the same. *Cf.* Restatement, Contracts, *supra, comment* b. The plaintiff could be found to have been unfairly deprived of the opportunity to have her rights determined by a jury, or to determine them herself in the exercise of intelligent and untrammeled judgment. The evidence that she acted freely was not so conclusive that undue influence could not be found. *Edgerly* v. *Edgerly*, 73 N. H. 407.

Like most cases involving undue influence, the case must stand upon its own facts. The Trial Court, in considering the various circumstances bearing upon the issue, had the advantage of observing the witnesses on the stand. The jury, under instructions to which no exception is presented, found that the covenant was obtained by undue influence. We are not disposed to hold either that the Court's ruling on the motion for a nonsuit, or that the verdict of the jury was erroneous as a matter of law.

The grounds for the defendant's motion to set aside the verdict do not appear; but if we assume that it rested upon the usual grounds, the exception to its denial has no merit. The issues raised are disposed of by the finding of the Trial Court in denying the motion (*Wisutskie* v. *Malouin*, 88 N. H. 242), and by the opinion of this court that a nonsuit was not required. In view of the order which follows, there is no occasion to consider exceptions taken by the plaintiff.

*Defendant's exceptions overruled.*

All concurred.