Marcelina VAZQUEZ VARGAS,
Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HU-
MAN SERVICES, Defendant,
Appellee.

No. 87–1496.

United States Court of Appeals,
First Circuit.

Heard Dec. 11, 1987.

Decided Jan. 27, 1988.

Vicky Acosta De Gelpi and Jose A. Santini Bonilla, on brief, for appellant.

Donald H. Romano, Office of the Gen. Counsel, Social Sec. Div., Dept. of Health and Human Services, Baltimore, Md., Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., Donald A. Gonya, Chief Counsel for Social Sec., Randolph W. Gaines, Deputy Chief Counsel for Social Sec. Litigation, and A. George Lowe, Chief, Disability Litigation Branch, Baltimore, Md., on brief, for appellee.

Before CAMPBELL, Chief Judge, and COFFIN and SELYA, Circuit Judges.

PER CURIAM.

Claimant last met the insured status requirement on September 30, 1976. She applied for disability benefits claiming she was disabled since December 31, 1975. In a previous decision, which is now no longer subject to judicial review, claimant had been found not disabled through March 31, 1976. Ruling on claimant's second application for benefits, the Secretary concluded claimant had failed to show the existence of a severe impairment prior to the expiration of insured status and denied benefits. Claimant, who was unrepresented at the administrative level, contends that the ALJ failed adequately to develop the record and that the severity regulation was misapplied.

We review the record. Claimant's application for benefits based disability on hypertension, cardiovascular disease, migraine, and diabetes. The very few records which predate the expiration of insured status are brief and cryptic. The first, a September 12, 1974 (a year claimant worked) note from Dispensarios de Salud, records severe headache and dizziness, diagnoses migraine, and prescribes fiorinal. The second, from Bayamon Municipal Hospital dated October 29, 1974, again notes migraine and dizzy spells and refers claimant to a clinic. Next, almost a year later, is a December 11, 1975 outpatient complaint of headache. Four months later (4/26/76), claimant reported headache again, and in July 1976 she had a pain on the left side of the abdomen and a backache. The last entry before the expiration of insured status is dated August 19, 1976. Claimant reported being nervous and very weak. Multivitamins were prescribed.

The next entry (January 8, 1978) is over a year after the expiration of insured status. Claimant complained of eye discomfort and stated she felt weak. Several other visits followed in 1978 (6/21/78—pain in left side; 8/24/78 feels well; 10/17/78—headache, itch in back; 12/12/78—no complaints). The first overt notation in the progress notes we find of diabetes is dated March 15, 1979,[1] and complaints of heart palpitations and angina began in 1980. From then on, there are quite a number of records reflecting diabetes, hypertension, angina, and other problems and complaints.

A form dated December 11, 1981 lists as diagnoses "uncontrolled diabetes mellitus, controlled hypertension, angina pectoris,

---

1. Conceivably, diabetes may have been diagnosed earlier, as fasting blood sugar test results are given in 1978 records and a form dated December 11, 1981 lists "deabetis mellitus—11–11–71." Resolution of the onset date is not crucial, however, for even if diabetes did commence in 1971, claimant was employed during parts of 1973, 1974, and 1975 and there is nothing (at least nothing intelligible to a lay person) to indicate that the diabetes was more severe or incapacitating in 1976 than it had been during the time claimant was employed.

old myocardial infarction." The form dates the angina to three years earlier (that is, presumably, 1978 which is after the expiration of insured status) and states that claimant is totally disabled. In a report dated February 17, 1982, Dr. Lopez Pagan (there is no indication whether Dr. Lopez was a treating physician) wrote that claimant had hypertension, well controlled, diabetes mellitus under control for many years, angina pectoris class II–C, and migraines which cause dizzy spells. He concluded claimant was unable to work. Neither the December 11, 1981 form nor Dr. Lopez purported to assess when claimant's condition became disabling.

At the hearing, claimant testified she cannot work because she gets pains in the chest and dizziness. This condition first occurred in 1974, she said, but she was able to work until 1976. She did not mention a heart problem in her earlier application for disability benefits because she was then being reviewed for migraines and she did not see a cardiologist until two months after the first hearing. Around 1981 or 1982 doctors at Social Services told her she was incapacitated, she said.

■ The ALJ concluded no severe condition had been shown prior to the expiration of insured status. Given the paucity of pre-expiration medical evidence, we conclude the ALJ's decision is supported by substantial evidence. The headaches and other complaints sporadically reported prior to September 30, 1976 could well be found to be transient imposing no significant limitation on the ability to perform basic work activities.[2] Nor did the ALJ apply the wrong standard in assessing se-

verity, for the ALJ specifically stated claimant's impairment did not significantly limit claimant's ability to do basic work-related activities and the pre-September 30, 1976 medical evidence does not suggest any sustained functional limitation.[3] In view of the lack of relevant medical evidence suggesting any significant limitation in claimant's ability to work prior to the expiration of insured status, there was no need for the ALJ to inquire into the precise nature of claimant's former job.

■ Claimant argues, however, that she never understood the need for additional medical evidence and that the ALJ failed in his duty to her, a pro se claimant.

Claimant is tenth grade educated. This is not claimant's first application for benefits. An earlier application was denied in an ALJ decision dated January 10, 1978. At that time, claimant was represented by a lawyer. Claimant was advised at the various stages of her present application of the need for further evidence. The September 23, 1983 letter denying claimant's claim at the initial level explained that the claim was being denied because the facts were unchanged since the earlier denial and advised claimant to supply any additional evidence about her condition as it existed on or before September 30, 1976. Again, in the January 19, 1984 denial at the reconsideration level, claimant was told she had not shown any new facts about her condition as it was prior to September 30, 1976. At the May 4, 1984 hearing, the ALJ told claimant the record was inadequate to find disability as of September 30, 1976. Claimant said that she had been treated at Comerio but that those records did not

2. Claimant contends the ALJ's findings are inconsistent. She argues that the finding that claimant had "received treatment for diabetes mellitus by history, arteriosclerotic disease, arterial hypertension, coronary insufficiency and angina pectoris" conflicts with finding number 3, which reads as follows: "The claimant has the following impairment: arterial hypertension." Because claimant had received treatment for conditions in addition to hypertension, claimant maintains that these other conditions should have been listed as impairments. However, most likely finding number three was addressed to impairments existing during insured status (a July 6, 1976 record had given claim-

ant's blood pressure as 160/100) while the former finding was not so restricted in time. Indeed, the ALJ pointed out that most of the medical evidence applied to a period far beyond the expiration of insured status.

3. It may be that the ALJ went on to conclude that claimant's post-September 1976 ailments, specifically her heart condition, were not severe. Since claimant needed to establish disability prior to September 30, 1976, we need not determine whether the post-September 30, 1976 conditions were or were not severe.

appear. The ALJ explained he would need "some sort of identification" such as dates, the name of the attending doctor, and other information regarding when an illness occurred in order to obtain further records, and he asked her to return the following Wednesday with one of her children, meet with the hearing assistant, and supply the relevant information. There is no indication claimant complied. Nevertheless, on the day of the hearing, the ALJ did write to the Department of Social Services of Comerio and obtained medical records from them.

We reject claimant's contention that the ALJ did not do enough to help her adequately develop the record. Among other things, the ALJ asked claimant why she could not work, when her condition first occurred, and when the doctors had told her she was disabled. In view of claimant's answer dating disability to 1981, we think the ALJ adequately explored matters. Nor was the ALJ remiss in not obtaining further medical records. The ALJ told claimant the record was not adequate and asked her to supply some identification so that he might send for any more records. Claimant did not comply. Furthermore, according to claimant's own testimony, her doctors dated disability to 1981 or 1982. As insured status expired September 30, 1976, it is unlikely the allegedly missing evidence would have made any difference. Moreover, claimant is now represented, yet counsel has not shown that any medical records pertaining to claimant's pre-September 31, 1976 condition that were not presented to the ALJ existed.

We do not find the case on which claimant relies, *Thorton v. Schweiker*, 663 F.2d 1312 (5th Cir.1981), persuasive. There, prior to her hearing before the ALJ, claimant, in writing, had requested the Secretary to obtain medical records from specified doctors. Claimant had supplied the names and addresses. The records were not obtained. Even though claimant, represented by counsel, failed to object either at the hearing before the ALJ or in the district court to the Secretary's failure to obtain the records, the Fifth Circuit remanded to the district court to determine whether the omitted evidence warranted a remand to the Secretary. The court stated as follows:

> "[I]n order to prevent a miscarriage of justice, we conclude ... that once the Social Security Administration received [claimant's] letters requesting assistance in obtaining specific medical and psychological records, the administrative process should not have proceeded to a final decision without either some assurance from [claimant] that she no longer sought to present the records, or notice from the Social Security Administration that it would not obtain the records and that [claimant] would have ample time to acquire the records herself and file them with the ALJ for consideration."

*Id.* at 1316.

■ In the present case, in contrast, the ALJ specifically told claimant he would not obtain further records unless she supplied further information to help him identify what was missing, and he set a date for claimant to meet with his hearing assistant who would help her. Thus, claimant was on notice that, absent compliance from her, the ALJ was not going to further supplement the record. Claimant has not suggested that the ALJ's request for identifying data from her was unreasonable and has not explained her apparent failure to meet with the hearing assistant. Consequently, we do not fault the Secretary for failing to obtain further records. Here, as in *Evangelista v. Sec'y of HHS*, 826 F.2d 136, 143 (1st Cir.1987), claimant offered no real proof "suggesting the sort of prejudice or unfairness attributable to self-representation as would warrant [relief]." And, as in *Evangelista*, we find that the ALJ's handling of the matter was "sufficiently forthcoming." *Id.*

*Affirmed.*