MacFarlane v. MacKean                  CV-92-614-SD  10/31/96
                UNITED STATES DISTRICT COURT FOR THE

                     DISTRICT OF NEW HAMPSHIRE

James MacFarlane

        v.                                  Civil No. 92-614-SD

Edgar D. McKean III;
Julia M. Nye;
McKean, Mattson & Latici, P.A.


                          O R D E R


     This order addresses the issues raised by certain pending

motions.


1.   Plaintiff's Motion for Permission to Contact Jurors

(document 94)

     This case went to jury trial in June of 1996.  At the close

of plaintiff's case, the court granted the defendant's motion for

judgment as a matter of law.  Rule 50(a), Fed. R. Civ. P.  The

jury was then discharged.

     Local Rule 47.3 is entitled "Communications with Jurors".

It provides:

            No attorney, party, or witness, acting directly
        or through the use of an agent, shall attempt to
        communicate with any juror, prospective juror, or
        former juror concerning the person's service as a
        juror without obtaining prior approval from the
        court.  The court will not approve a request to
        communicate with a juror except in extraordinary
        circumstances and for good cause shown.

Suggesting that this case presents "extraordinary circumstances" such that "communication with the jurors . . . would be very instructive and useful in plaintiff's appeal," Plaintiff's Motion at 1, plaintiff requests permission to contact the jurors.  Conceding in its response that the matter is addressed to the discretion of the court, the defendants take no position with respect to such request.  Document 95.

It is a well-established rule of law that courts must "'protect jurors and their verdicts from unwarranted intrusions.'"  Mahoney v. Vondegritt, 938 F.2d 1490, 1491 (1st Cir. 1991) (quoting Commonwealth v. Fidler, 377 Mass. 192, 196, 385 N.E.2d 513, 516 (1979)), cert. denied, 502 U.S. 1104 (1992).  "The reluctance to probe into jury decisionmaking should give way only in the face of 'a showing sufficient to undergird genuine doubts about impartiality.'"  Id. at 1491-92 (quoting Neuron v. Tierney, 841 F.2d 1197, 1202 (1st Cir. 1988)).  Moreover, even when such allegations are made, trial judges possess broad discretion in determining how to respond to allegations of extraneous influence on jurors.  Id. at 1492; Rule 606(b), Fed. R. Evid.[1]

_____

[1]Rule 606(b), Fed. R. Evid., provides,

Upon an inquiry into the validity of a verdict or

Of course, in the instant case, the jury had not commenced deliberations, nor had they been finally instructed by the court. Moreover, no claim is made that they were subject to any extraneous influences, and, accordingly, the court finds that the thought processes of the jury up to the point they were discharged would be irrelevant to any issues pending in this case on appeal. Furthermore, the court finds that to permit interrogation of them at this juncture would constitute unwarranted harassment and invasion of the jurors' privacy.

Accordingly, the motion for permission to contact the jurors must be and is herewith denied.

---

indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

3

2. Defendants' Motion for Rule 11 Sanctions (document 90)

Contending that the complaint in this action contained a variety of unsubstantiated allegations of fraud, collusion, conspiracy, and intentional misconduct against the defendants and others, the defendants seek the imposition of sanctions against plaintiff and his attorney. Plaintiff objects. Document 106.[2]

From commencement in late 1992 until April 1, 1996, the litigation in this matter was advanced by plaintiff James MacFarlane appearing pro se. On the latter date, Attorney David A. Lambarth appeared for the plaintiff.

The original purpose of Rule 11, Fed. R. Civ. P., was stated to be "to deter dilatory and abusive tactics in litigation and to streamline the litigation process by lessening frivolous claims or defenses." Cruz v. Savage, 896 F.2d 626, 630 (1st Cir. 1990). "The appropriate standard for measuring whether a party and his . . . attorney ha[ve] responsibly initiated and/or litigated a cause of action in compliance with Rule 11, as amended in 1983, is an objective standard of reasonableness under the

---

[2]Plaintiff originally moved to strike the motion for sanctions on the ground that a copy had not been properly served upon him. Document 102. Subsequently, the parties worked out an agreement whereby an extension of time was granted for the filing of an objection or response to the motion for sanctions. The objection to the motion for sanctions, bearing the signatures of both plaintiff and his counsel, was timely filed within the time granted by such extension.

4

circumstances." <u>Id.</u> at 631 (citations omitted). This means that the conduct at issue is to be evaluated based upon what was reasonable at the time the challenged action took place. <u>Id.</u>

Effective December 1, 1993, Rule 11 was again substantially amended. The compensatory and punitive purposes served by its predecessor were changed to place primary focus on deterrence rather than compensation. <u>Silva v. Witschen</u>, 19 F.3d 725, 729 & n.5 (1st Cir. 1994). The court accordingly must consider the differences in the applicable rules as they govern the course of this litigation.

The court initially notes that much of the conduct of which the defendants complain occurred without the confines of the judicial process. The allegations are: that counsel were submitted to a barrage of "hate mail" and otherwise unwarranted correspondence from plaintiff; that copies of the complaint were mailed to business entities in the Concord and Laconia areas; that a copy of the complaint was posted in the law library of the Franklin Pierce Law School; that on one occasion Attorney Nye, while conducting depositions in Maine in an unrelated case, was startled by the sudden appearance of plaintiff, who took her photograph; and that the continued barrage of unwanted correspondence since termination of the trial is not within the

5

parameters of Rule 11 in either its 1983 or 1993 versions.[3]  As such do not involve any pleading or paper submitted to the court, it may not be sanctioned pursuant to either version of Rule 11.  Chambers, supra note 3, 501 U.S. at 41; Media Duplication Servs. v. H.D.G. Software, Inc., 928 F.2d 1228, 1241 (1st Cir. 1991).

Defendants contend that plaintiff's trial testimony that he had spent over 4,000 hours at 15 law libraries in preparation of this case puts him in a position more akin to an experienced attorney than a pro se party.  Although the court is expressly aware of the rule that pro se plaintiffs are not automatically exempted from the requirements of Rule 11, Warren v. Guelker, 29 F.3d 1386, 1390 (9th Cir. 1994), it cannot fully accept that such self help transforms a pro se plaintiff into an experienced attorney.

Plaintiff suggests that the fact that he withstood dispositive motions on his way to the jury trial supports his position in pursuing this litigation.  But it is well established that the "summary judgment standard (based on filed documents) and Rule 11's standard (based on what reasonable inquiry should have revealed, perhaps about other information) [are not]

---

[3]While Chambers v. Nasco, Inc., 501 U.S. 32 (1991), permits a court to sanction extrajudicial conduct in certain circumstances, such "'inherent powers must be exercised with restraint and discretion.'"  Whitney Bros. Co. v. Sprafkin, 60 F.3d 8, 13 (1st Cir. 1995) (quoting Chambers at 44).

necessarily or inevitably congruent." <u>Muthig v. Brant Point Nantucket, Inc.</u>, 838 F.2d 600, 606 (1st Cir. 1988). Viewed, however, under the required objective standard of reasonableness, the court finds that, prior to the appearance of counsel on April 1, 1996, there could be no sanctionable violations pursuant to Rule 11, Fed. R. Civ. P.

At that point, the 1993 amendment to Rule 11(b), Fed. R. Civ. P., included within the certified representations the "later advocating" that "(3) the allegations and other factual contentions have evidentiary support."[4] As thus amended, Rule 11 "'continues to require litigants to "stop-and-think" before initially making legal or factual contentions,'" <u>Aetna Casualty & Surety Co. v. Kellogg</u>, 856 F. Supp. 25, 32 (D.N.H. 1994) (quoting notes of Advisory Committee on 1993 amendment to Rule 11, Fed. R. Civ. P.).

---

[4]As amended in 1993, Rule 11(b)(3) provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that, to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances--
>
> . . . .
>
>   (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

As hereinabove indicated, Attorney Lambarth entered this case on April 1, 1996. Trial commenced on June 18, 1996. Although in his opening statement Attorney Lambarth asserted that defendants had committed fraud, conspiracy, and other grave acts of intentional misconduct, no evidence in support thereof was presented to the jury. As the trial progressed, defendants asked Attorney Lambarth whether his client intended to withdraw such claims, and the only response was that counsel would discuss the matter with his client. No withdrawal of these unsupported allegations was made prior to termination of the case.

The court finds and rules that Attorney Lambarth and the plaintiff, Mr. MacFarlane, violated the provisions of Rule 11(b)(3), supra note 4, by failure to make a reasonable inquiry that the contentions here complained of had reasonable evidentiary support.[5]

The court accordingly turns to the sanctions to be imposed. Amended Rule 11(c)(2) mandates that sanctions "be limited to what is sufficient to deter repetition of such conduct or comparable

---

[5]Apparently, from review of the objection to the motion, Attorney Lambarth has adopted the mistaken belief of his client that if the jury disbelieved any answers of defendants at trial it could infer such denials to prove the contrary. It is, of course, an elemental evidentiary rule that such disbelief does not satisfy the burden of proof of the contrary fact. Jodoin v. Baroody, 95 N.H. 154, 59 A.2d 343 (1948); Thibault v. Manchester Shoe Mfg. Co., 94 N.H. 53, 46 A.2d 117 (1946).

8

conduct by others similarly situated." Included in the available sanctions are "directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Id.

The defendant McKean seeks entitlement to a sanction of $21,000, made up of: a $5,000 deductible paid to his insurance carrier; $5,000 of billable time and expense causing the procedural dismissal of the action when it was originally initiated in Maine; $5,000 of billable time and expense lost in preparation for trial in this case; and $6,000 of billable time lost in connection with his appearance at the trial.

Defendant Nye suggests a more modest loss, which includes five working days for preparation and attendance at trial and mileage involved in travel to and from the court.

It is an unfortunate fact of life that when litigation is commenced those parties sued must defend their positions. On many occasions, even when they prevail, they cannot expect nor do they receive full compensation for losses they have undergone in preparing and presenting such defenses. This is the case here, and, while the court sympathizes with the position of the defendants, it finds that, applying the objective standard of

9

reasonableness herewith required under the circumstances of this case, the proper sanction, herewith imposed jointly on Attorney Lambarth and plaintiff James MacFarlane, is the sum of $2,000, to be paid each defendant, or a total of $4,000. While this probably does not compensate for all losses incurred, the court finds it to be the most appropriate sanction, computed at $400 per day per defendant, that should be awarded in the circumstances of this case.

3. Conclusion

For the reasons hereinabove set forth, the court has denied the plaintiff's request for permission to contact the jurors, document 94, and has granted defendants' motion for Rule 11 sanctions, document 90. Sanctions are herewith imposed jointly on Attorney Lambarth and plaintiff James MacFarlane in the sum of $2,000 to be paid to each defendant, or a total of $4,000. Such sanctions are to be paid to the defendants within 30 days of the date of this order.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

October 31, 1996
cc: All Counsel