Juan E. CRUZ, et al.,
Plaintiffs, Appellants,

v.

Robert SAVAGE, etc., et al.,
Defendants, Appellees.

No. 88–1770.

United States Court of Appeals,
First Circuit.

Heard June 9, 1989.
Decided Feb. 20, 1990.

Maria H. Sandoval, with whom Law Office of Nachman & Fernandez–Sein, Santurce, P.R., was on brief, for plaintiffs, appellants.

Isabel Munoz Acosta, Asst. U.S. Atty., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, TORRUELLA, Circuit Judge, and CAFFREY,* Senior District Judge.

CAFFREY, Senior District Judge.

This is an appeal of an order and opinion of the United States District Court for the District of Puerto Rico which imposed sanctions in the amount of $3,000.00 against plaintiffs' counsel, pursuant to Rule 11 of the Federal Rules of Civil Procedure and section 1927 of Title 28 of the United States Code. Fed.R.Civ.P. 11; 28 U.S.C. § 1927. The plaintiffs-appellants in this action are Monica Cruz, an eighteen year-old high school senior, Juan E. Cruz and Julia Cruz, her parents, and Alicia Cruz, her sister. The defendants-appellees include the superintendent, the high school principal, the high school assistant principal, and the board chairman of the Antilles Consolidated School System.[1] The plaintiffs-ap-

* Of the District of Massachusetts, sitting by designation.

1. Robert Savage was the superintendent; Dennis Smith was the principal; Jean Ruiz was the assistant principal; and Rafael Ramirez was the chairman of the board of Antilles Consolidated School System. The plaintiffs had also named as a defendant Colonel Robert C. Deshler who was the Commander of Fort Buchanan, the military base where Antilles high school was locat-

pellants asserted ten claims, five *Bivens* claims[2] and five pendant state claims, against the defendants-appellees, who were all federal employees. The plaintiffs' claims arose out of an investigation, search, and related disciplinary proceeding that the defendants conducted to determine if plaintiff Monica Cruz had violated the school's regulations by being in an unauthorized area, by possessing a knife, and by smoking cigarettes and/or marijuana.

After a lengthy jury trial, the jury returned a verdict in favor of the defendants on all claims. Thereafter, the defendants-appellees filed a motion requesting attorney's fees in which they moved the court to sanction the plaintiffs and their counsel by requiring them to bear the cost of defendants' attorney's fees and expenses. Pursuant to Rule 11 and section 1927, the district court concluded that the "plaintiffs' attorney ha[d] engaged in frivolous and vexatious conduct and ha[d] unreasonably multiplied the proceedings" and ordered the plaintiffs' counsel to pay $3,000.00 as attorney's fees. *Cruz v. Savage*, 691 F.Supp. 549, 556–57 (D.P.R.1988). Plaintiffs-appellants now appeal the district court's order imposing this sanction against plaintiffs' counsel. Upon careful review, we conclude that the district court's imposition of sanctions was a proper exercise of its discretion, and accordingly we affirm.

## I.

The relevant facts of this case are as follows. On February 10, 1984, plaintiff Monica Cruz along with six other students of Antilles high school were huddled between two parked trucks in an area off-limits to students. Upon seeing these students, Luis J. Falu, the school audio-visual technician, informed the assistant principal, Jean Ruiz, of the location of the students and that he believed the students were smoking marijuana. Ruiz herself then ob-

served the area and noticed smoke rising up from between the two trucks. Ruiz asked the physical education teacher to summons the military police of the base and then went to a location in the school from which she could better observe the area. As the group disbanded, Ruiz observed and identified each student. She saw Monica Cruz leave the group under an umbrella with another student.

The students were thereafter called to the principal's office. Ruiz asked Monica Cruz to accompany her. When they arrived at Ruiz's office, she informed Monica Cruz that she was accused of smoking marijuana. Monica Cruz denied smoking marijuana, but admitted smoking a tobacco cigarette. While Ruiz and Monica Cruz were in the office, Ruiz told Monica Cruz that she had a right to search her. Rather than have Ruiz search her, Monica emptied her own pockets and pocketbook. Monica Cruz removed a knife from her pocketbook and gave it to Ruiz. Ruiz then escorted Monica Cruz to her locker, and Monica emptied her locker to allow Ruiz to inspect its contents.

Monica Cruz's parents were summoned to the school. In the presence of her parents, the military police advised Monica Cruz of her rights and proceeded to question her. Monica Cruz, advised by her parents, refused to answer any questions. Similarly, the parents of the other students were summoned, and the students were read their rights and questioned. One of the six students admitted that they had all shared a marijuana cigarette. Another student admitted smoking a marijuana cigarette with some of the other students, but could not say whether Monica Cruz had smoked it also.

In a letter dated February 15, 1984, the principal, co-defendant Dennis Smith, informed the parents of Monica Cruz of the charges against their daughter. According to the letter, Monica Cruz was charged with possession of marijuana, possession of

---

ed. The court, however, dismissed the action against Colonel Deshler because his decision to bar plaintiff Monica Cruz from the base during non-school hours was not arbitrary or capricious.

2. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

a dangerous knife, being in an unauthorized area, and smoking during school hours. In this letter, Smith further stated that he had reviewed all the evidence provided by the students and witnesses involved and had evaluated Monica Cruz's statements to Ruiz. Based on a preponderance of this evidence, Smith stated, he concluded that Monica Cruz was in violation of the school disciplinary code on all charges. As a result of these violations, Monica Cruz was suspended from school for ten days, placed on probation for the remainder of the year, and prohibited from participating in all school activities for the rest of the year. The letter further advised that they had a right to appeal this decision to the Disciplinary Advisory Committee and that the disciplinary action would be held in abeyance until the committee issued its decision.

The letter from Smith was given to Monica Cruz in Ruiz's office where Monica was allowed to read it and ask questions regarding its contents. Ruiz explained the letter and the appeal procedure. Thereafter, Monica Cruz delivered a letter to Smith from her father, Juan Cruz, which requested an appeal and information, such as an explanation of the evidence supporting the charges. Neither Smith, nor any other school authority, responded to Juan Cruz's letter. Subsequently, Monica Cruz selected one teacher, one parent, and one student to comprise the Disciplinary Advisory Committee that would review the incident and disciplinary action proposed. On February 23, 1984, the committee assembled, reviewed the evidence and listened to the comments of Monica's father, Juan Cruz. The Committee then unanimously voted to uphold the disciplinary action proposed by the school superintendent and outlined in Smith's letter of February 15, 1984. Mr. and Mrs. Cruz were informed of the Committee's decision, and Monica's Cruz's ten-day suspension began on March 1, 1984. The other five students all received the same punishment.

The plaintiffs, Monica Cruz, her parents and her sister, instituted this action on May 21, 1984. In the complaint, the plaintiffs asserted ten claims against the defendants—five *Bivens* claims and five pendant state claims. The plaintiffs' first claim alleged that the defendants suspension and further discipline of Monica was without notice and an opportunity to be heard in violation of Monica Cruz's right to due process under the fifth amendment. The second claim also alleged a violation of Monica's rights of due process. In support of the second claim, the plaintiffs alleged that the principal, Smith, had coerced Monica's father, Juan Cruz, not to retain legal counsel, thus depriving Monica Cruz of learning of her due process rights and enabling the defendants to conduct an unfair hearing in which Monica Cruz was denied the opportunity to know the identity of her accusers, to confront and cross-examine them, to present evidence in her favor, to know the standard by which she was being judged, and to have counsel present.

The plaintiffs' third claim alleged that the searches of Monica Cruz's person, pocketbook, and locker were without her consent and in violation of her right to privacy under the fourth amendment. In their fourth claim, the plaintiffs alleged that Monica Cruz was denied her sixth amendment right to counsel in criminal proceedings. The plaintiffs withdrew this claim at trial. The plaintiffs' fifth claim alleged that the defendants violated the Antilles Consolidated School System Code of Student's Rights and Responsibilities and Conduct by not giving Monica Cruz prior notice and a hearing as guaranteed by the Code. The plaintiffs also withdrew this claim at trial because it was, for all practical purposes, indistinguishable from plaintiffs' first claim.

The plaintiffs' sixth and seventh claims were defamation claims in which the plaintiffs alleged that the defendants had caused them embarrassment, anguish and anxiety by needlessly and carelessly disseminating and publishing false information about Monica Cruz. The plaintiffs' eighth claim further alleged that the defendants' dissemination and publication of this information violated their rights to privacy guaranteed by the laws of Puerto Rico. In the plaintiffs' ninth claim, they alleged that

Juan Cruz was caused embarrassment in his employment and irreparable injury to his employment status and career prospects because he was forced to inform his employer of the defendants' actions, all in violation of his right to privacy under the laws of Puerto Rico. Finally, the plaintiffs' tenth claim stated a cause of action for intentional infliction of emotional distress under the laws of Puerto Rico.

Prior to trial, the defendants filed a motion for summary judgment. The court denied this motion because under the required summary judgment standard it had viewed the evidence in the light most favorable to the plaintiffs, the non-moving party, and "because of Attorney Sandoval's [plaintiffs' attorney] implicit promise that at trial she would produce the necessary facts to sustain her client's claims." *Cruz*, 691 F.Supp. at 551–52. Thus, trial proceeded on all of plaintiffs' claims. As previously stated, the plaintiffs withdrew both their fourth and fifth claims at trial. At the end of trial, the jury returned a verdict in favor of the defendants on the remaining claims.

After trial, the defendants filed a Motion Requesting Attorney's Fees in which they argued that the plaintiffs' claims were asserted in bad faith and were frivolous in law and in fact. The defendants moved the court to order the plaintiffs to pay the defendants' attorney's fees in the amount of $40,625.00. The defendants also requested that the plaintiffs' attorney be sanctioned under Rule 11 and required to bear the cost of the defendants' attorneys fees. In a written order and opinion, the court concluded that the plaintiffs' claims were frivolous and that the plaintiffs' attorney had engaged in vexatious conduct and had unreasonably multiplied the proceedings. Thus, pursuant to Rule 11 and 28 U.S.C. § 1927, the district court imposed a sanction in the amount of $3,000.00 only on the plaintiffs' attorney. After reviewing the briefs, the transcript, the district court's written opinion, and the applicable law, we hold that the district court did not abuse its discretion in sanctioning the plaintiffs' attorney in the amount of $3,000.00.

## II.

The purpose of Rule 11 is to deter dilatory and abusive tactics in litigation and to streamline the litigation process by lessening frivolous claims or defenses. *See* Fed. R.Civ.P. 11, advisory notes. To achieve these goals, Rule 11 requires attorneys to take responsibility for the claims and defenses they represent; attorneys must make reasonable inquiry to assure that the claims, defenses and positions represented by them are well-grounded in both law and fact and are not intended to serve an improper purpose, such as harassment or delay.[3] Under the rule, attorneys are also under a continuing obligation to ensure that the proceedings do not continue without a reasonable basis in law and fact. *Robinson v. National Cash Register*, 808 F.2d 1119, 1127 (5th Cir.1987); *cf. Nemeroff v. Abelson*, 704 F.2d 652, 658–59 (2d Cir.1983). The rule thus requires attorneys "to conduct [themselves] in a manner bespeaking reasonable professionalism and consistent with the orderly functioning of the judicial system." *Figueroa–Rodriguez v. Lopez–Rivera*, 878 F.2d 1488, 1491 (1st Cir.1988) (*quoting In re D.C. Sullivan Co.*, 843 F.2d 596, 598 (1st Cir.1988)), *aff'd in part on rehearing en banc*, 878 F.2d 1478 (1989).

---

**3.** Rule 11 provides in relevant part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11.

The appropriate standard for measuring whether a party and his or her attorney has responsibly initiated and/or litigated a cause of action in compliance with Rule 11, as amended in 1983, is an objective standard of reasonableness under the circumstances. *Muthig v. Brant Point Nantucket, Inc.*, 838 F.2d 600, 604–05 (1st Cir.1988); *Kale v. Combined Ins. Co. of Am.*, 861 F.2d 746, 756–57 (1st Cir.1988); *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 873 (5th Cir.1988); Fed R.Civ.P. 11, advisory notes. Before Rule 11 was revised in 1983, the standard under Rule 11 was a subjective one of good faith. *Kale*, 861 F.2d at 757. Under revised Rule 11, however, subjective good faith is no longer enough to protect an attorney from Rule 11 sanctions. *Robinson*, 808 F.2d at 1127. A violation of Rule 11, as revised, might be caused by inexperience, incompetence, willfulness, or deliberate choice. *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir.1987); *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3rd Cir. 1987). In imposing sanctions under Rule 11 and measuring an attorney's conduct under this objective standard, courts should exercise caution. Courts should avoid using the wisdom of hindsight and instead evaluate an attorney's conduct based upon what was reasonable at the time the attorney acted. Fed.R.Civ.P. 11, advisory notes. Sanctions under Rule 11, moreover, should not be imposed so as "to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Id.*

Section 1927 of Title 28 of the United States Code also provides for the assessment of sanctions directly against an attorney:

> Any attorney or person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Under section 1927, an attorney's conduct must multiply the proceedings and be "unreasonable and vexatious" to warrant the imposition of sanc-

tions. The courts of appeals of various circuits have applied this unreasonable and vexatious requirement inconsistently. Some courts have construed the language "unreasonably and vexatiously" to require a showing of intent, recklessness or bad faith. *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir.1983) (section 1927 requires a finding that counsel acted recklessly or in bad faith); *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1048 (9th Cir.1985) (section 1927 requires a showing of intent, recklessness or bad faith); *Suslick v. Rothschild Secs. Corp.*, 741 F.2d 1000, 1006 (7th Cir.1984) (section 1927 requires subjective bad faith by the attorney); *Baker Indus., Inc. v. Cerberus*, 764 F.2d 204, 208 (3rd Cir.1985) (bad faith is a necessary predicate to liability under section 1927). Other courts have ruled that section 1927 does not require a demonstration of bad faith as a precondition to the imposition of sanctions. *In re Ruben*, 825 F.2d 977, 983–84 (6th Cir.1987), *cert. denied*, 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988); *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986); *Lewis v. Brown & Root, Inc.*, 711 F.2d 1287, 1291–92 (5th Cir.1983), *aff'd in part on rehearing*, 722 F.2d 209, *cert. denied*, 467 U.S. 1231, 104 S.Ct. 2690, 81 L.Ed.2d 884 (1984); *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226–27 (7th Cir. 1984). Rather than a subjective standard of bad faith, these courts have stated that section 1927 requires a more relaxed, objective standard that does not require conscious impropriety. *See, e.g., Jones*, 789 F.2d at 1230; *In re Ruben*, 825 F.2d at 984. Nevertheless, all of the courts, including those applying a lesser standard, at minimum agree that merely unintended, inadvertent, and negligent acts will not support an imposition of sanctions under section 1927. *Ruben*, 825 F.2d at 984.

In this circuit we have never explicitly construed the language "unreasonably and vexatiously" contained in section 1927. Our prior decisions reveal, however, that while an attorney's bad faith will always justify sanctions under section 1927, we do not require a finding of subjective

bad faith as a predicate to the imposition of sanctions. *See Action Mfg., Inc. v. Fairhaven Textile Corp.*, 790 F.2d 164, 166 (1st Cir.) (sanctions imposed on appeal), *cert. denied*, 479 U.S. 854, 107 S.Ct. 188, 93 L.Ed.2d 122 (1986); *United States v. Nesglo, Inc.*, 744 F.2d 887, 891–92 (1st Cir. 1984); *see also Lisa v. Fournier Marine Corp.*, 866 F.2d 530, 532 (1st Cir.) (sanctions imposed on appeal), *cert. denied*, —— U.S. ——, 110 S.Ct. 75, 107 L.Ed.2d 41 (1989); *Ochoa Realty Corp. v. Faria*, 815 F.2d 812, 817–18 (1st Cir.1987) (sanctions imposed on appeal). Behavior is "vexatious" when it is harassing or annoying, regardless of whether it is intended to be so. Thus, if an attorney's conduct in multiplying proceedings is unreasonable and harassing or annoying, sanctions may be imposed under section 1927. The attorney need not intend to harass or annoy by his conduct nor be guilty of conscious impropriety to be sanctioned. It is enough that an attorney acts in disregard of whether his conduct constitutes harassment or vexation, thus displaying a "serious and studied disregard for the orderly process of justice." *Nesglo*, 744 F.2d at 891 (*quoting Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1167 (7th Cir.1968)); *Action*, 790 F.2d at 166. Yet, we agree with other courts considering this question that section 1927's requirement that the multiplication of the proceedings be "vexatious" necessarily demands that the conduct sanctioned be more severe than mere negligence, inadvertence, or incompetence. *See Ruben*, 825 F.2d at 984. Finally, in assessing whether an attorney acted unreasonably and vexatiously in multiplying proceedings, the district courts in this circuit should apply an objective standard.

### III.

We review a district court's Rule 11 determination only for an abuse of discretion. *Kale v. Combined Ins. Co. of Am.*, 861 F.2d 746, 758 (1st Cir.1988). In reviewing the imposition of sanctions under section 1927, we likewise apply an abuse of discretion standard. *EBI, Inc. v. Gator Industries, Inc.*, 807 F.2d 1, 6 (1st Cir.1986); *Nesglo*, 744 F.2d at 892. Under an abuse of discretion standard, the responsibility for imposing sanctions properly rests with the judicial actor closest to the litigation—the district court judge—who is in the best position to evaluate the circumstances surrounding an alleged violation and render an informed judgment. *Kale*, 861 F.2d at 758. Unless the district court's imposition of sanctions in the form of attorneys fees in this case constitutes an abuse of discretion, therefore, we defer to the district court's judgment.

### IV.

In the instant case, the district court sanctioned the plaintiffs' counsel under the authority of both Rule 11 and section 1927. In its written decision, the court reviewed the plaintiffs' claims and the plaintiffs' counsel's conduct in litigating those claims. Applying an objective standard of reasonableness as required under Rule 11, the court scrutinized each of the plaintiffs' claims for a Rule 11 violation. The court found the majority of the plaintiffs' claims to be frivolous, that is, either not well-grounded in fact or unwarranted by existing law or a good faith argument for an extension, modification or reversal of existing law. We find no abuse of discretion in this finding.

The district court first found that the plaintiffs' second claim, alleging that Monica was denied due process because the principal coerced Juan Cruz into not retaining counsel, was unsupported by evidence and completely frivolous. The district court determined that counsel's continued prosection of the plaintiffs' third claim, alleging that the search of Monica Cruz's pocketbook and locker constituted a violation of her fourth amendment rights, was unwarranted in light of the United States Supreme Court decision of *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985),[4] and the lean evidence presented to the jury.

---

**4.** In *New Jersey v. T.L.O.*, the Supreme Court held that the search of a student by a teacher or

other school official need not be based on "probable cause" to believe that the law has

The district court noted that the plaintiffs' fourth claim, regarding Monica Cruz's right to counsel under the sixth amendment, was anticipatory because no criminal action had been or ever was instituted against Monica. Plaintiffs' counsel finally recognized the anticipatory nature of this claim at trial and voluntarily withdrew it. The plaintiffs' fifth claim, the district court stated, was also withdrawn at trial because it was essentially indistinguishable from the plaintiffs' first claim.

The district court further concluded that the plaintiffs' two defamation claims (claims six and seven), the right to privacy claim (claim eight), and the claim for intentional infliction of emotional distress (claim ten) were unsupported by the evidence produced at trial. Regarding claims six, seven and eight, no evidence was presented demonstrating "derision" of Monica Cruz by her classmates or of the co-plaintiffs by other persons, other than the plaintiffs' own statements of their embarrassment. Additionally, the evidence clearly showed that the defendants were not deliberately needless and careless in disseminating information about the violations and the hearing. Regarding the tenth claim, the plaintiffs failed to demonstrate that the defendants' conduct was outrageous or motivated by "no legitimate reason." The most ludicrous and consequently the most frivolous of plaintiffs' claims, the court concluded, was the ninth claim which alleged that Juan Cruz's right to privacy was violated and that he suffered damages because he was forced to discuss his daughter's suspension with his employer. Under these circumstances, the district court's order of Rule 11 sanctions was not an abuse of discretion.

We are mindful that in making Rule 11 determinations, judges should not employ the wisdom of hindsight, but should consider the reasonableness of the attorney's conduct at the time the attorney acted. We do not believe that the district court in this case found the plaintiffs' claims frivolous because of any special wisdom received during the course of the litigation that was unknown to the plaintiffs' attorney when the claims were brought. The evidence produced at trial simply revealed to the judge that the plaintiffs' claims were not well-grounded in fact or warranted by the law. The plaintiffs' attorney was in a position to know the claims were unsupported by fact or law prior to bringing the claims and throughout the litigation. Upon review, we find that the district court's conclusion that plaintiffs' attorney unreasonably brought and pursued frivolous claims is adequately supported by the record. Accordingly, we hold that the district court was well within its discretion in sanctioning plaintiffs' attorney under Rule 11.

After the district court's examination of the plaintiffs' claims for frivolity under the Rule 11 objective standard, plaintiff's first claim emerged as the only claim asserted by the plaintiffs which was well-grounded both in fact and law. The court ruled, however, that the plaintiffs' attorney's litigation of this claim was "a vexatious time consuming exercise which bore no fruit." *Cruz,* 691 F.Supp. at 553. Again, the plaintiffs' first claim was a procedural due process claim which alleged that Monica Cruz had been suspended and otherwise disciplined without adequate notice and a hearing. When litigating this claim, plaintiffs' counsel refused to adhere to the issue of whether Monica Cruz received due process. Instead, plaintiffs' counsel attempted to duplicate the disciplinary hearing and retry the issue of whether the charges against Monica Cruz were supported by sufficient

been violated. 469 U.S. 325, 340–41, 105 S.Ct. 733, 742–43, 83 L.Ed.2d 720 (1985). Rather, the court held that a search of a student by school officials does not violate the student's fourth amendment rights as long as the search is reasonable under the circumstances; the search must be "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.*

at 341, 105 S.Ct. at 743 (*quoting Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)). Such a search will be justified at its inception, the Court stated, "when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.* 469 U.S. at 342, 105 S.Ct. at 743.

evidence. The district court admonished plaintiffs' counsel a number of times, stating warnings such as: "As I told you ...— this is not an appeal from the administrative hearing. This is an independent suit filed by the parents and the student for damages under a civil rights action. And I'm not going to retry this thing. I'm not here to second guess what went on over there at the Antilles school system." The court's admonitions, however, were to no avail—plaintiffs' attorney persisted despite these warnings.

■ The district court determined that the attorney's conduct in litigating this first claim and other conduct engaged in by her during the course of the litigation unreasonably and vexatiously multiplied the proceedings, thus justifying the imposition of sanctions in the form of attorney's fees under section 1927. In addition to her conduct as to the first claim, the court stated that "[t]hroughout the pre-trial and trial proceedings plaintiffs' attorney continually engaged in obfuscation of the issues, hyperbolism and groundless presumptions" in addition to insinuating that the court was biased.[5] *Cruz,* 691 F.Supp. at 555. The plaintiffs' attorney also refused to produce the knife that Monica Cruz had been carrying despite her admission that this knife had been given to her by Juan Cruz. This behavior of the plaintiffs' attorney led the district court to the conclusion that the plaintiffs' attorney's behavior was both unreasonable and vexatious and resulted in unnecessary multiplication of the proceedings. We find that the district court's ruling that the attorney's conduct unreasonably and vexatiously multiplied the proceedings was clearly supported by the trial transcript. Accordingly, we hold that the district court's award of attorney's fees under section 1927 was not an abuse of discretion.

In imposing sanctions against plaintiffs' attorney, the court did not find plaintiffs' attorney guilty of bad faith, of any conscious impropriety, or of intentionally engaging in vexatious conduct. Under Rule 11's objective standard of reasonableness under the circumstances and the objective standard which we have above indicated is applicable under section 1927, however, bad faith is not required for an award of attorney's fees under either Rule 11 or section 1927. Moreover, the plaintiffs' attorney's conduct was not merely inadvertent or negligent and her good faith alone will not save her from such sanctions under Rule 11 or section 1927.

■ In sanctioning the plaintiffs' attorney, the district court was mindful that sanctions should not be imposed to chill an attorney's enthusiasm, creativity or zealous advocacy. The district court found, however, that the plaintiffs' attorney's zeal blinded her to the realities of the case and interfered with her professional performance. As the court wrote,

> [T]here is a point beyond which zeal becomes vexation, the 'novel' approach to a legal issue converts to frivolity and steadfast adherence to a position transforms to obdurateness. Here, attorney Sandoval's judgment was clouded by her excessive zeal to the point that her performance became unlawyerly.

*Cruz,* 691 F.Supp. at 556. Nevertheless, the court refused to award a sanction equivalent to the opposing attorney's fees, which amounted to $40,625.00. Instead, after careful review of the defendants' attorney's attested time and worksheet, the court chose the amount of $3,000.00—an amount that the defendants' attorney's court time at least would support. As the court stated, "[t]his is an amount the [c]ourt finds suitable for its purposes with respect to the specific conduct proscribed in ... [section] 1927 and Rule 11 while still avoiding the impression that the sanction is imposed to chill counsel's proper zealous conduct." *Id.* After careful consideration, we are convinced that the district court's decision to require plaintiffs' attorney to personally pay to the defendants the sum of $3,000.00 as attorney's fees, pursuant to

---

5. After reviewing the trial transcript, we are convinced that appellant's allegations that the district court judge was prejudiced were nothing more than that—mere allegations which are totally unsubstantiated.

both Rule 11 and section 1927, was well within its discretion. Accordingly, we affirm.

### V.

■ As a final matter, this appeal of sanctions imposed for bringing frivolous litigation is as frivolous, dilatory and vexatious as the proceedings that went before it. By bringing this appeal, the plaintiffs' attorney has again unreasonably and vexatiously multiplied the proceedings. 28 U.S.C. § 1927. Thus, we assess double costs against plaintiffs' attorney under Rule 38 of the Federal Rules of Appellate Procedure and attorney's fees in the amount of $1,000.00 pursuant to section 1927. Fed.R.App.P. 38; 28 U.S.C. § 1927.

*Affirmed.*