IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 6, 2009 Session

## THOMAS & ASSOCIATES, INC. v. TENNESSEE AMERICAN CONTRACTORS, INC.

### Appeal from the Chancery Court for Davidson County
No. 06-112-II     Carol L. McCoy, Chancellor

### No. M2008-01845-COA-R3-CV - Filed August 19, 2009

The issue on appeal is whether the trial court erred in imposing Tenn. R. Civ. P. 11 sanctions against the defendant and its attorneys for failing to dismiss the counterclaim filed against the plaintiff. Prior to the trial of the case, the plaintiff filed a Rule 11 motion for sanctions contending the filing of defendant's counterclaim violated Rule 11. Thereafter, the case went to trial on the plaintiff's complaint and defendant's counterclaim. At the close of the proof, the defendant voluntarily dismissed its counterclaims. After the trial was concluded, the trial court held that the defendant and its attorneys violated Rule 11 because the evidence presented at trial revealed that the counterclaim had no basis in fact or law and they failed to dismiss the counterclaim when the motion for sanctions was filed. We have determined the trial court applied an incorrect legal standard by evaluating the issue with the wisdom of hindsight instead of examining the circumstances existing at the time the counterclaim was signed by the attorneys, and for imposing sanctions for failing to voluntarily dismiss the counterclaim, because Rule 11 does not impose a duty to review or reevaluate a pleading once filed or to take affirmative steps thereafter to dismiss a previously filed pleading. Therefore, we reverse the imposition of Rule 11 sanctions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

James H. Harris III, Nashville, Tennessee, for the appellant, Tennessee American Contractors, Inc.

Vic L. McConnell, Nashville, Tennessee, for the appellee, Thomas & Associates, Inc.

### OPINION

The matters on appeal arise from a subcontract agreement between two construction companies, Thomas & Associates, Inc. ("Thomas") and Tennessee American Contractor, Inc. ("TAC"). In 2004, the developer of Hamilton Church Subdivision entered into a construction agreement with TAC whereby TAC was to grade the construction site of the planned subdivision and

install water and sewer services to the site. Thereafter, TAC sub-contracted the grading work to Thomas. The grading work was to be done in three phases and the subcontract required Thomas to complete all three phases in 180 days; however, before the first phase was completed, the relationship between the parties deteriorated with each party blaming the other for unnecessary delays. Following a series of discussions and demands, followed by escalating accusations of which party was at fault for the delays, TAC notified Thomas on September 23, 2005 that it was terminated from the project. Thomas replied on October 3, 2005, stating termination was unjustified and threatening a lawsuit. Further, Thomas demanded TAC pay lost earnings in the amount of $145,339.16 for wrongful termination.

On January 13, 2006, Thomas filed this action in the Davidson County Chancery Court alleging that TAC had breached the subcontract agreement and failed, or refused, to pay Thomas. TAC filed an Answer denying, *inter alia*, allegations of complete performance by Thomas. TAC further alleged that Thomas acted in bad faith and breached the subcontract by failing to perform.

Twenty months after filing its Answer, TAC filed a Counterclaim alleging claims against Thomas for breach of contract, tortious interference with a business relationship, and defamation. The Counterclaim was verified under oath by the president of TAC. In the Counterclaim, TAC alleged that: 1) Thomas breached the subcontract by failing to complete performance of the grading project; 2) Thomas tortiously interfered with TAC's business relationship with Homes by Design, Inc.[1] by delaying performance on the grading project and copying Homes by Design on all responses sent by Thomas to TAC; and 3) Thomas defamed TAC by copying Homes by Design on correspondences from Thomas alleging TAC's work was deficient and inadequate.

Two months after TAC filed its Counterclaim, Thomas took the deposition of the President of TAC, Gene Blanton.[2] Shortly after Mr. Blanton's deposition, counsel for Thomas informed counsel for TAC of his belief that the Counterclaim lacked any factual basis and should be voluntarily dismissed. TAC's counsel agreed to consider dismissing the tort claims, but ultimately declined to voluntarily dismiss the Counterclaim. Thereafter, pursuant to Tenn. R. Civ. P. 11.03, counsel for Thomas drafted a Motion to Impose Rule 11 Sanctions and served a copy of the motion on TAC. In the motion, Thomas alleged that TAC's counterclaims contained neither a factual basis, nor a legal basis, and, further, that the counterclaims were brought for the purpose of harassing Thomas in violation of Tenn. R. Civ. P. 11.02. Thomas took no action in response to the Rule 11 motion; therefore, on February 1, 2008, TAC filed the Rule 11 motion with the court. The motion for sanctions was not set for hearing until March 29, 2008, after the trial of the case.

The case proceeded to trial on Thomas' claims and TAC's counterclaims. The trial lasted three days. At the close of all the proof, but before closing arguments, TAC voluntarily dismissed

---

[1] Homes By Design, Inc., was the developer of the Hamilton Church Subdivision, which contracted with TAC to grade the construction site and install water and sewer services.

[2] Mr. Blanton testified in his individual capacity and as a representative of TAC pursuant to Tenn. R. Civ. P. 30.02(6).

with prejudice all of its counterclaims. At the conclusion of the trial on February 14, 2008, the trial court found in favor of Thomas on the breach of contract claim, awarding damages to Thomas in the aggregate amount of $134,712.28.

A memorandum in support of the motion for Rule 11 sanctions was filed on March 13, 2008, after the trial concluded. Attached to the memorandum were: (1) the Notice of Deposition of Gene Blanton served on December 10, 2007; (2) the letter from counsel for Thomas & Associates to counsel for TAC forwarding the copy of the Motion to Impose Rule 11 Sanctions; (3) the transcript from the deposition of Gene Blanton; and (4) the affidavit of Thomas & Associates' counsel as to its attorney's fees and costs. On March 24, 2008, TAC filed a brief in response, wherein TAC set forth a statement of facts and legal argument in opposition to the motion for sanctions.

On March 29, the trial court conducted a hearing on the motion for Rule 11 sanctions. After considering the legal memoranda and hearing oral arguments, the trial court granted Thomas' motion on the grounds that TAC's tort claims should have been withdrawn and the failure to do so resulted in Thomas incurring unnecessary litigation costs, for which the court awarded monetary sanctions against TAC and its attorneys, J. Thomas Martin and Barry Neil Shrum. The trial court's findings applicable to the issue on appeal are stated in the order of April 15, 2008, which reads in pertinent part:

Based upon the pleadings filed in this matter, the presentation of evidence at trial, the testimony of the parties and witnesses, the exhibits introduced at trial, the statements of counsel and the entire record in this cause, this Court finds as follows:

1. This lawsuit was filed on January 13, 2006.

2. On October 30, 2007, TAC filed a counterclaim against Thomas alleging causes of action for Intentional Interference with Business Opportunity and Libel (hereinafter "tort claims.").

3. During discovery, it was revealed that there existed insufficient proof to support the tort claims alleged by TAC against Thomas under Tennessee law.

4. On January 11, 2008 and pursuant to Rule 11.03(1)(a) of the Tennessee Rules of Civil Procedure, counsel for Thomas served a Motion to Impose Rule 11 Sanctions upon counsel for TAC and notified counsel for TAC that the Motion would be filed with the Court by Thomas if TAC did not dismiss the tort claims within 21 days of service of the Motion.

5. TAC did not dismiss/withdraw the subject tort claims within 21 days after service of the Motion and Thomas filed the Motion to Impose Rule 11 Sanctions on February 1, 2008.

6. On February 11-14, 2008, the subject tort claims were tried before this Court. At the conclusion of the proof and before closing arguments, TAC voluntarily dismissed with prejudice the subject tort claims.

7. Based upon the entire record and the proof presented at trial, TAC's counterclaims pertaining to Intentional Interference with Business Opportunity and Libel contained allegations which did not have evidentiary support and contained claims and other legal contentions that were not warranted by existing Tennessee law. As such, the tort claims should have been withdrawn and TAC and its counsel, jointly and severally, violated Rule 11 of the Tennessee Rules of Civil Procedure by refusing to dismiss/withdraw the subject tort claims.

8. The refusal of TAC and its counsel to dismiss/withdraw the subject tort claims caused Thomas to incur needless litigation costs in the amount of $14,872.50.

WHEREFORE, it is hereby ORDERED that Thomas & Associates, Inc. shall have an award and is granted a judgment against Tennessee American Contractors, Inc., J. Thomas Martin and Barry Neil Shrum, jointly and severally, in the amount of $14,872.50 according to the findings hereinabove set forth.

This appeal by TAC and its attorneys followed. The issues presented by the appellants are whether the trial court improperly applied the legal standards applicable to Tenn. R. Civ. P. 11; whether the court improperly imposed sanctions; and whether the court incorrectly interpreted the law of defamation and tortious interference with business relationships.

STANDARD OF REVIEW

This court reviews a trial court's decision regarding Tenn. R. Civ. P. 11 sanctions pursuant to the abuse of discretion standard. *See Krug v. Krug*, 838 S.W.2d 197, 205 (Tenn. Ct. App. 1992) (adopting the standard employed by the United States Supreme Court in *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399, 405 (1990)). This deferential standard is attributable to the fact-intensive examination required for the trial court to determine whether a violation of Rule 11 has occurred. *Krug*, 838 S.W.2d at 205.

-4-

Tennessee Rule of Civil Procedure 11 provides that the signature of an attorney to a pleading, motion or paper presented to the court signifies that the attorney "has conducted a reasonable inquiry into the facts and the law, and is satisfied that the document is well-grounded in both, and is acting without any improper motive." *Andrews v. Bible*, 812 S.W.2d 284, 287 (Tenn. 1991) (citing *Bus. Guides, Inc. v. Chromatic Commc'n Entm't*, 498 U.S. 533, 542 (1991); *Cooter*, 496 U.S. at 392)).

> "The essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit. A signature sends a message to the [trial judge] that this document is to be taken seriously." *Business Guides*, 111 S.Ct. at 930. The purpose of Rule 11 as a whole is to bring home to the individual signer his personal, nondelegable responsibility. "The message thereby conveyed to the attorney, is that this is not a team effort but in the last analysis, *yours alone*, precisely the point of Rule 11." *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 460, 107 L.Ed.2d 438 (1989). An attorney who signs a paper without the required substantiated belief "shall" be penalized by "an appropriate sanction." This sanction may, but need not, include payment of the other party's expenses. Although the rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, see Advisory Committee notes, any interpretation must give effect to the rule's central goal of deterrence. *Cooter & Gell*, 110 S.Ct. at 2454. *See also*, Note, "The Immediate Appealability of Rule 11 Sanctions," 59 Geo.Wash. L.Rev. 683 (1991) (purpose of Rule 11 is to prevent abusive and dilatory tactics by litigants).

*Andrews*, 812 S.W.2d at 287-88.

If a party to the action believes a pleading, motion or other paper filed with the court is in violation of Rule 11, that party may put the adversary on notice by serving a copy of the motion on the adversary – without filing it with the court – in which the party "shall describe the specific conduct alleged to violate subdivision 11.02." Tenn. R. Civ. P. 11.03(1)(a). The motion "shall not be filed with or presented to the court" unless within twenty-one days after service "the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." *Id*. If it is withdrawn or corrected within the twenty-one-day grace period, the issue becomes moot. If not, the party may file the motion with the court.

Once the motion is put at issue, it becomes the duty of the trial court to determine whether Tenn. R. Civ. P. 11.02 has been violated. The test to be applied by the court when deciding whether an attorney's conduct is sanctionable as a violation of Rule 11 "is one of objective reasonableness under all the circumstances, and the reasonableness of the attorney's belief must be assessed in light of the circumstances existing at the time the document in question was signed." *Andrews*, 812 S.W.2d at 288 (internal citation omitted).

If the trial court concludes that Rule 11 has been violated, the court is required to make fact-intensive determinations, *Hooker v. Sundquist*, 107 S.W.3d 532, 537 (Tenn. 2002), and "the court shall describe the conduct determined to constitute a violation of this rule." Tenn. R. Civ. P. 11.03(3). For purposes of Rule 11 sanctions, merely stating at the conclusion of the trial on the claims at issue that there was no factual or legal basis for a claim or that the proof was not sufficient to support the claims is insufficient; instead, the court is to make specific factual determinations, such as, whether the attorney failed to make a reasonable pre-filing investigation of the facts and whether the law as applied to the facts known at the time the pleading was signed did or did not reasonably warrant the legal position asserted in the pleading. *See Andrews*, 812 S.W.2d at 288 (citing *Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir. 1990)*; Whittington v. Ohio River Co.*, 115 F.R.D. 201, 209 (E.D. Ky. 1987)) (holding that findings regarding the attorney's factual investigation, legal research and analysis are to be evaluated under the objective standard based upon the circumstances existing at the time the pleading was signed).

If a violation is found and a sanction is to be imposed, the trial court shall also "explain the basis for the sanction imposed." Tenn. R. Civ. P. 11.03.  If a sanction is imposed, the sanction

> shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. . . .  [T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Tenn. R. Civ. P. 11.03(2).[3]

In the case at bar, the trial court conducted a hearing on the Rule 11 motion after the trial of the case was concluded and based its decision that TAC and its attorneys violated Rule 11 on two key determinations.  One, that there was no factual or legal basis for TCA's Counterclaim, and two, that the Counterclaim should have been voluntarily withdrawn or dismissed once the Rule 11 motion for sanctions was filed.  We will discuss each in turn.

## I.

As we explained earlier, the test to be applied when deciding whether an attorney's conduct is sanctionable under Rule 11 is one of "objective reasonableness" and "the reasonableness of the attorney's belief must be assessed in light of the circumstances existing *at the time the document in question was signed*." *Andrews*, 812 S.W.2d at 288 (emphasis added).  Furthermore, the court

---

[3] The foregoing sanctions notwithstanding, "[m]onetary sanctions may not be awarded against a represented party for a violation of subdivision 11.02(2)." Tenn. R. Civ. P. 11.03(2)(a).  Subdivision 11.02(2) pertains to whether claims, defenses, and other legal contentions "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Tenn. R. Civ. P. 11.02(2).

conducting the examination must avoid using the wisdom of hindsight and, instead, ascertain what was reasonable to believe at the time the pleading was signed by the attorney. *See Andrews*, 812 S.W2d at 288 (citing *Cruz*, 896 F.2d at 631) (stating the Advisory Committee notes to the federal version of Rule 11 state "[t]he Court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time [of signing]"). For these reasons, a Rule 11 review is *"like a snapshot,"* the review *"focuses upon the instant when the picture is taken - when the signature is placed upon the document."* *Andrews*, 812 S.W2d at 290 (quoting *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 874 (5th Cir. 1988)) (emphasis added).[4]

It appears from the record on appeal that little if any evidence was presented during the trial that pertained to the relevant Rule 11 factors, i.e, the circumstances existing at the time the Counterclaim was signed on October 30, 2007. The Memorandum filed by Thomas & Associates after the trial was completed, which provided the only additional facts presented in support of the motion for sanctions, contained little if any additional evidence that pertained to the circumstances existing at the time the Counterclaim was signed. Instead, the memorandum filed by Thomas & Associates principally focused on the deposition of Gene Blanton, which was taken after the Counterclaim was filed.[5]

Based upon the findings stated in the trial court's order, it further appears the trial court did not focus upon the circumstances existing at the time the Counterclaim was signed; to the contrary, the order reveals the court based its findings on the pleadings and evidence presented during the trial of this action. The fact that the trial court based its findings on the pleadings and evidence *presented at trial* is evident from the introductory paragraph of the trial court's order of April 15, 2008, which expressly states the court's findings were "[b]ased upon *the pleadings* filed in this matter, the

---

[4] Our Supreme Court looked to federal authority to examine the issue concerning Tenn. R. Civ. P. 11 because, as the Court noted:

> the development of Rule 11 jurisprudence is far more advanced in the federal courts than in the state system because the provision has been a part of the Federal Rules of Civil Procedure since 1938, *Balfour Guthrie, Inc. v. Hunter Marine Transport*, 118 F.R.D. 66, 71 (M.D. Tenn. 1987), in contrast to Tennessee's version of Rule 11 which became law in 1971 as part of the Tennessee Rules of Civil Procedure. While there have been hundreds, if not thousands, of opinions construing Rule 11 in the federal system, our appellate courts have only once issued a reported opinion on the topic, *Con-Tech, Inc. v. Sparks*, 798 S.W.2d 250 (Tenn. Ct. App. 1990). *Con-Tech* indicates that in contrast to the federal version of Rule 11 which has been in existence since 1938, Tennessee's Rule 11 was not amended to conform to its federal counterpart until 1987. 798 S.W.2d at 252. It is for this reason that this Court finds it appropriate to examine federal decisional authority concerning the nature of the questions posed by the instant case.

*Andrews*, 812 S.W2d at 287.

[5] Having reviewed the record, we have determined that but for the statement of the facts submitted by TAC and its attorneys in opposition to the motion for sanctions, little evidence was presented to the trial court that pertained to the circumstances existing at the time the Counterclaim was signed on October 30, 2007.

presentation of *evidence at trial*, the *testimony* of the parties and witnesses, the *exhibits introduced at trial*, the statements of counsel and *the entire record in this cause*, . . ." (emphasis added).[6]

Having reviewed the record in detail, we have concluded the trial court erroneously evaluated the conduct of TAC's attorneys with the wisdom of hindsight instead of basing its decision upon the circumstances existing at the time TAC's attorneys signed the Counterclaim, as required by *Andrews*, 812 S.W2d at 288, and *Cruz*, 896 F.2d at 631. When a trial court's Rule 11 decision is based upon an incorrect legal standard, the trial court's decision is not entitled to the deferential standard of review as it is deemed to have acted outside the bounds of its discretion. *See Mercer v. Vanderbilt Univ.*, 134 S.W.3d 121, 131 (Tenn. 2004) (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)). Therefore, we have conducted our own examination of the facts in the record that pertain to the circumstances existing at the time the Counterclaim was signed. Based upon our examination of the record, we have determined the evidence is insufficient for this court to conclude that TCA's attorneys violated Rule 11 when they signed the Counterclaim on October 30, 2007. Accordingly, we reverse the trial court's finding that TAC and its attorneys violated Rule 11 as their conduct pertains to the circumstances existing at the time the Counterclaim was signed in October of 2007.

II.

We will now evaluate whether TAC and its attorneys violated Rule 11 by failing to voluntarily "withdraw/dismiss" the counterclaim *after* the Rule 11 motion for sanctions was filed by Thomas. The trial court specifically found:

> Based upon the entire record and the proof presented at trial, TAC's counterclaims pertaining to Intentional Interference with Business Opportunity and Libel contained allegations which did not have evidentiary support and contained claims and other legal contentions that were not warranted by existing Tennessee law. As such, *the tort claims should have been withdrawn and TAC and its counsel, jointly and severally, violated Rule 11 of the Tennessee Rules of Civil Procedure by refusing to dismiss/withdraw the subject tort claims*. (emphasis added)

We have determined the trial court erred by finding a violation of Rule 11 based on a refusal or failure to voluntarily dismiss or withdraw the Counterclaim. This is because an attorney has no affirmative duty to dismiss or withdraw a pleading previously filed.[7] *See Andrews*, 812 S.W.2d at

---

[6]That the trial court's evaluation was based on hindsight is further evident from the trial court's finding stated in paragraph 3 of the order: "*During discovery, it was revealed* that there existed insufficient proof to support the tort claims alleged by TAC against Thomas under Tennessee law." Discovery, which principally focused on the deposition of Gene Blanton, was taken after the Counterclaim was filed.

[7]After conducting a thorough review of federal intermediate appellate courts, our Supreme Court concluded that the federal courts were "almost unanimous in holding that Rule 11 applies only to the signing of the document" and there was no continuing duty to thereafter review or reevaluate the propriety of a previously signed pleading, motion or

(continued...)

291. As our Supreme Court explained, "No court has required a party to actually seek a dismissal." *Id*. (noting further that "[r]equiring counsel to aggressively pursue dismissal of his client's claim strikes us as being contrary to our adversary system"). The Court further determined in *Andrews* "that there are no continuing obligations imposed by Tennessee's version of Rule 11." *Id*.

Although an attorney has no affirmative duty to voluntarily withdraw or dismiss a pleading previously filed, once a pleading is determined to be legally or factually frivolous, any filing by the attorney in opposition to a proper motion to dismiss the offending pleading may violate Rule 11. *Andrews*, 812 S.W.2d at 291. As the Fifth Circuit Court of Appeals explained in *Thomas*, "we believe that a construction of Rule 11 which evaluates an attorney's conduct at the time a 'pleading, motion, or other paper' is signed is consistent with the intent of the rulemakers and the plain meaning of the language contained in the rule." *Thomas*, 836 F.2d at 874. As a practical matter, the court noted,

> while the review of an attorney's conduct for Rule 11 purposes is isolated to the moment the paper is signed, virtually all suits will require a series of filings. This series of filings may indicate a pattern of attorney conduct of some consequence. On the other hand, one or more of the filings may indicate attorney conduct entirely different from that reflected by previous filings. *In any event, Rule 11 applies to each and every paper signed during the course of the proceedings and requires that each filing reflect a reasonable inquiry.*

*Id.* at 875 (footnote omitted) (emphasis added).

In the case at bar, Thomas & Associates did not file a dispositive motion seeking to dismiss TAC's Counterclaim, which would have placed the burden on TCA's attorneys to choose between not opposing the dispositive motion or signing a pleading in opposition to the motion, thereby subjecting themselves to being evaluated on the basis of the circumstances existing at the time they filed the response in opposition to the dispositive motion. However, no motion was filed to dispose of the allegedly frivolous Counterclaim; thus, TAC's attorneys were never put to the test of having to determine whether to oppose a proper motion to dismiss TAC's Counterclaim.

In this regard, it is also significant to note that the party seeking Rule 11 sanctions has an affirmative duty to mitigate its damages. *See Biggers v. Houchin,* No. M2008-01356-COA-R3-CV, 2009 WL 2176567, at *8-9 (Tenn. Ct. App. July 21, 2009) (citing *Andrews*, 812 S.W.2d at 291; *White v. General Motors*, 908 F.2d 675, 684 (10th Cir. 1990); *Thomas*, 836 F.2d at 879)). As a general principle, the Supreme Court explained, "it would be inequitable to permit a [party] to increase the amount of attorney's fees recoverable as a sanction by unnecessarily defending against frivolous claims which could have been dismissed quickly on motion." *Andrews*, 812 S.W.2d at 291-92 (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2nd Cir .1986)). As one court observed:

---

[7](...continued)
paper filed with the court. *Andrews*, 812 S.W.2d at 289.

Permitting or encouraging the opposing party to litigate a baseless action or defense past the point at which it could have been disposed of tends to perpetuate the waste and delay which the rule is intended to eliminate. It also undermines the mitigation principle which should apply in the imposition of sanctions, limiting recovery to those expenses and fees that were reasonably necessary to resist the offending paper.

*Id.* at 292 (quoting *Thomas*, 836 F.2d at 889 n.19). Moreover, at least one district court has characterized a party's duty to mitigate damages as one encompassing a duty to use the least expensive method to resolve the dispute, stating

[t]hus, while an informal means may not always work to dispose of frivolous lawsuits quickly, the parties have a duty to try to resolve the frivolous claims using the least expensive alternative. The duty arises because the parties have the means available to them, both informal and formal, to gain early access to the judge presiding over their case. Because they have the means to keep the costs of litigation to a minimum, the parties should alert the court to problems that are possible to resolve early in the litigation, without the necessity for expensive, formal motions.

The duty is one of mitigation; it rests on the concept that the victim of a frivolous lawsuit must use reasonable means to terminate the litigation and to prevent the costs of that frivolous suit from becoming excessive. If a party eventually wins rule 11 sanctions, but has failed to use the least expensive route to early resolution, the court may rule that not all the expenses the successful party incurred in making formal motions were reasonable attorney's fees that should be awarded under rule 11.

*Thomas,* 836 F.2d at 879-80 (quoting *United Food & Commercial Workers v. Armour and Co.*, 106 F.R.D. 345, 350 (N. D. Cal. 1985)).[8]

Further, as the Tenth Circuit Court of Appeals explained in *White v. General Motors Corp., Inc.*, 908 F.2d at 684, the trial court must "independently analyze the reasonableness" of the fees requested in a motion for sanctions. This analysis necessarily includes considering whether the injured party has mitigated their damages. *Id.* (declaring, "[t]he injured party has a duty to mitigate costs by not overstaffing, overresearching or overdiscovering clearly meritless claims"). This is most relevant when one considers that "a court's *primary* purpose in imposing sanctions is to deter, not to compensate. . ." *Thomas*, 836 F.2d at 881. Accordingly, instead of proceeding to trial to defend the allegedly frivolous Counterclaim, it may have been more appropriate for Thomas & Associates to have pursued a path less expensive than proceeding to trial, such as filing a motion to dismiss, or

---

[8]The court in *Thomas* went on to explain in a footnote: "While we . . . strongly encourage litigants to use the least expensive alternative to alert the court and the offending party of a Rule 11 violation, we stress that what constitutes the appropriate alternative will vary depending on the nature of the case and the severity of the violation." *Thomas*, 836 F2d at 880 n.20 (citing *United Food*, 106 F.R.D. at 350).

other dispositive motion, which may have mitigated Thomas' expenses; however, no dispositive motion was filed.

The trial court found TAC and its attorneys violated Rule 11 because of their refusal or failure to voluntarily dismiss or withdraw the Counterclaim. We have determined that finding was based on an incorrect legal standard because an attorney has no affirmative duty to dismiss or withdraw a pleading previously filed. *See Andrews*, 812 S.W.2d at 291. Accordingly, we reverse the trial court's finding that TAC and its attorneys violated Rule 11 for failing to voluntarily dismiss or withdraw the Counterclaim.[9]

## IN CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded with costs of appeal assessed against Thomas & Associates, Inc.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[9] Our ruling regarding the first two issues raised by the appellants renders moot the appellant's third issue, whether the court incorrectly interpreted the law of defamation and tortious interference with business relationships. Thus, that issue is not addressed in this opinion.