**In re HMCA (CAROLINA), INC., Debtor.**

**In re HMCA (PR), Inc., Debtor.**

**Nos. 90–03402(ANV), 90–03403(ANV).**

United States Bankruptcy Court, D. Puerto Rico.

Dec. 4, 2003.

Pedro A. Jimenez, Gonzalez Oliver, Correa Calzada, Collazo Salazar, Herrero & Jimenez, San Juan, PR, for Debtors.

Jean Philip Gauthier, San Juan, PR, for Department of Health for the Commonwealth of Puerto Rico.

*OPINION AND ORDER FINDING AGENTS OF PUERTO RICO DEPARTMENT OF HEALTH IN FURTHER CONTEMPT, AND IMPOSING ADDITIONAL PERSONAL SANCTIONS*

ARTHUR N. VOTOLATO, Bankruptcy Judge.*

A recital of the later travel of what has become a judicial embarrassment, is helpful to readers who have not been living with the case since 1990, and is set out in our September 27, 2001 Opinion and Order Allowing Compensatory Sanctions, etc. See Exhibit A. That Order was neither responded to nor complied with, so on February 12, 2003, we ordered the Puerto Rico Department of Health (DOH) agents

---

* Of the District of Rhode Island, sitting by designation.

and attorneys to show cause why they should not be held in further contempt, and why additional sanctions of $150 per day should not be imposed because of their repeated failure to comply with valid prior Court orders. *See* Exhibit C. To the present Show Cause Order we have received one written response, which appears to be yet another attempt at delay and obfuscation, as DOH counsel Jean Philip Gauthier, Esq., continues to pretend not to understand that the sanctions in question were levied personally against him and his colleagues, and *not* against the government's coffers. *See Williams v. United States (In re Williams)*, 215 B.R. 289, 300 (D.R.I. 1997), *appeal dismissed*, 156 F.3d 86 (1st Cir.), *reh'g denied*, 158 F.3d 50 (1st Cir. 1998), *cert. denied*, 525 U.S. 1123, 119 S.Ct. 905, 142 L.Ed.2d 904 (1999) ("Allegations of bad faith government misconduct necessarily implicates the conduct of the government actors involved, and there is nothing novel in sanctioning attorneys personally for discovery abuse."); *see also United States v. Horn*, 29 F.3d 754, 766–67 (1st Cir.1994) (Neither sovereign immunity nor separation of powers is a bar to personally sanctioning a government attorney). Based on what has gone on in this case to date, the enforcement of personal sanctions is absolutely necessary to acquaint DOH employees and agents with the differences between legal/ethical right and wrong,[1] and to discourage them from further insulting taxpayers by their persistence in seeking to have the public pay their fines, as well as their salaries.

To recap briefly, on September 28, 2001, judgment entered in the amount of $9,050, jointly and severally against the DOH *and its attorneys and agents*, pursuant to this Court's September 27, 2001, Opinion and Order Allowing Compensatory Sanctions. See Exhibit A. Mr. Gauthier sought relief from said Order, and on February 25, 2002, his Motion to Reconsider was denied, with the admonition:

> Implicit herein is the requirement that the guilty party(ies) pay the sanction(s) personally, and that they may not apply for reimbursement from the Commonwealth. To have any meaning, these sanctions must be paid by the wrongdoers, and not simply passed on to taxpayers....
>
> Closure of this matter is long overdue, and the respondents are forewarned that further delay will likely result in the imposition of additional sanctions.

Order Denying Motion to Reconsider, February 25, 2002, Document No. 659, at 2–3 (citations omitted). See Exhibit B. Neither the September nor the February Orders were appealed, and they are final orders. Both Orders were ignored, so on February 12, 2003, I issued yet another Order for the DOH attorneys and agents to show cause why additional sanctions of $150 per day should not be imposed for their cavalier disregard of Court orders throughout the pendency of this case. See Exhibit C. Written responses to said Order were due on or before February 28, 2003, and again the only response was by Mr. Gauthier, who again evaded the issue of personal liability, saying:

> 2. Upon the Court reiterating its order, in July 2002, the undersigned coordinated a meeting with attorney Omar Cancio and the legal Affairs Director of the Department of Health (DOH), Mayra Maldonado, to discuss the order entered and the manner in which the same was to be complied with. In said meeting, attorney Maldonado set forth that

---

1. During the course of these proceedings the government decision makers have either been oblivious to such distinctions, or have chosen to ignore them. Over time, it has become obvious that it is the latter.

upon considering the case and the order handed down, *the DOH was to pay the monies in accordance with the September 28th, 2001 order.* (Emphasis added.)

3. Upon the DOH determining to pay the sanctions as ordered by this Court, the undersigned attorney has contacted both the legal department of the DOH and attorney Omar Cancio to follow up on the payment of the sanctions imposed, to which the subscribing counsel has been indicated that there is a bureaucratic logistical difficulty which prevents the issuance of the check to the debtor.

4. That once the undersigned received a copy of the order to show cause filed and entered by the Honorable Court on the 12th of February, 2003, the subscribing counsel has attempted unsuccessfully to coordinate a meeting with the DOH and attorney Cancio to discuss the issuance of the check to the debtor.

Motion in Compliance With Order to Show Cause, Document No. 662. In his papers, Gauthier continues to sidestep the fact that he and his colleagues owe these sanctions *personally.* This shameless refusal by the respondents to acknowledge their personal liability trivializes any regard they may have had for their oaths, and their ethical obligations as officers of the Court.

Based on the entire record in this case, which is replete with government impropriety, by agents who disgrace the Commonwealth by their autocratic and unprofessional action,[2] and which demeans the users of the healthcare system, I find that the respondents have failed to show why they should not again be adjudged in contempt, and ORDER that additional sanctions of $150 per day be imposed against them. Because these are the only names we presently have, Mayra Maldonado, Esq., Jean Philip Gauthier, Esq., and Omar Cancio Martinez, Esq.,[3] are ORDERED jointly and severally to pay $150 per day, since March 27, 2002,[4] for each day that the original $9,050 sanction ordered on September 28, 2001, remains unpaid.

Finally, the respondents are forewarned that, contrary to the prior latitude to which they have apparently become accustomed, for any further transgressions proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1) will be issued and transmitted to the District Court with our recommendation that the contemnors be held in criminal contempt, with all of the attendant consequences. *See In re Negro,* 1996 WL 277967 (Bankr. D.R.I.1996) (respondent was incarcerated by order of the District Court on account of his ongoing contemptuous conduct).[5]

2. For example, the arbitrary and wrongful withholding of funding from this hospital by DOH agents who recklessly increased the vulnerability of sick people already at risk. *See In re HMCA (Carolina), Inc. & HMCA (P.R.), Inc.,* BK Nos. 90–03402 & 90–03403 (Bankr.D. Puerto Rico, June 24, 1991).

3. As for other responsible individuals, it is and has been the obligation of DOH insiders to disclose who they are, but the known actors have failed to identify other participants in the misconduct that has generated all this litigation. Therefore, the above-named individuals are deemed personally responsible for monetary sanctions, which at present total

$67,350, and counting. To hopefully penetrate this ongoing conspiracy of silence, the respondents are reminded of the obvious, i.e., that increasing the size of the known responsible person pool should reduce the pro rata financial burden of each of them.

4. Instead of going back to the date of the judgment, we have selected the more conservative date of thirty days after entry of the order denying Gauthier's motion to reconsider (Document No. 659).

5. The foregoing Opinion and Order was ready for filing and would have been signed on June

## POSTSCRIPT

*After* the foregoing opinion was finalized and after it was delivered for filing with the Bankruptcy Court in Puerto Rico, this Court heard for the first time that on or about March 31, 2003, $9,050 had been provided by the DOH to Omar Cancio, who then delivered the money to Debtors' counsel, Pedro Jimenez, Esq. This ostensible compliance is a brazen extension of the ludicrous games the respondents continue to play. On July 24, 2003, during a (recorded) telephonic hearing to determine, inter alia, the source of the payment, Attorney Cancio confirmed that this Court was not informed of the payment, and that the sanction had in fact been paid by the DOH. Inexplicably, Cancio also stated that "the DOH decided to pay the funds to satisfy the Court order, but it had every intention of pursuing the individual responsible," namely one Cruz Arroyo, "because Mr. Arroyo's bad deeds extend far beyond this case and that the DOH would just add this to its list."

This highly questionable revelation does not even approach compliance with any of our prior orders, and still shows defiance of the explicit requirement that sanctions must be paid by the responsible individuals, and not by the government. At the conclusion of the hearing, Attorney Pedro Jimenez was ordered to hold the funds until further order, and to conduct discovery to determine the identity of all others involved in this debacle. If Cruz Arroyo, Esq., is in fact the only person responsible, as now alleged by Mr. Cancio, that will need to be established formally, and with more credibility than what was presented on July 24, 2003.

Based on the present record, the foregoing Order is amended as follows: Since the respondents have failed to show cause why additional sanctions of $150 per day should not be imposed, said sanction is added to the prior assessments and shall be calculated from February 12, 2003, the day of the Show Cause Order, until March 31, 2003, the day the $9,050 was paid by the DOH. Within ten days from the date hereof, the individual respondents are ORDERED, jointly and severally, to *personally* pay $9,050 and the additional sanction of $7,050,[6] to Pedro Jimenez, Esq., to be held by him until further order as to how the funds should be disbursed. Just in case it still isn't clear to them, the individual respondents are ORDERED not to seek or accept reimbursement from *any* agency of the Commonwealth of Puerto Rico. If the $9,050 and the $7,050 sanctions are not timely (within ten days) paid, then $500 will be added for each day that the instant order remains unsatisfied and, as promised, the matter will be referred to the District Court for enforcement.

### EXHIBIT A

### OPINION AND ORDER ALLOWING COMPENSATORY SANCTIONS, AND DENYING DEBTORS' REQUEST FOR PUNITIVE SANCTIONS

Heard on the Debtors' Motion for Compensatory and Punitive Sanctions against the Puerto Rico Department of Health ("DOH"), alleging that DOH: (1) wilfully violated a prior injunction of this Court dated June 24, 1991; and (2) filed a motion

---

19, 2003, but for the *disclosure of the information* discussed in this postscript.

**6.** While the above sanction is significantly less than the $67,000 one imposed in the original order, *see* footnote 3 *supra,* it comes after our sua sponte recognition that additional sanctions should run from the February 12, 2003 Order to Show Cause, wherein notice was clearly given as to the Court's intentions, should the actors persist in their errant ways.

to obtain Medicare reimbursement funds to which it clearly was not entitled, in violation of Fed. R. Bankr.P. 9011. For the following reasons, the Motion for Compensatory Sanctions is GRANTED, and the Debtors are awarded $9,050 in fees and costs for having to intervene to obtain Medicare receivables that were clearly the property of the Debtors. As for the Debtors' request for punitive sanctions, while the Court repeatedly requested and invited the Debtors to do so, at the hearings on March 18, 1998 and May 3, 2000, they offered no evidence to support such a claim, and so that request is DENIED. Our reasons for both rulings are given below.

### BACKGROUND

This ongoing dispute between the Debtors and the DOH has a long and acrimonious history, fueled by both sides, neither of whom has always behaved at acceptable ethical levels.[1] Approximately one year after the filing, the DOH sent letters dated August 8, 1990, and February 1, 1991, to Medicare, to prevent or delay payment of substantial funds to the Debtors. In response, the Debtors sought and obtained an injunction and a ruling by the Bankruptcy Court in June 1991, that DOH's actions constituted a wilful violation of the automatic stay and a "blatant attempt by the DOH to frustrate and interfere with the Debtors' reorganization efforts." Order dated June 24, 1991, at 4. Also, the DOH was ordered to stop interfering with the Debtors' entitlement to Medicare re-

ceivables, and was enjoined from engaging in similar misconduct in the future, with a clear warning that "personal criminal sanctions would be recommended to the District Court for further violations." *Id.* at 5.

While the parties were awaiting this Court's decision on the merits as to whether the DOH breached its pre-petition operating contract with the Carolina Area Hospital, DOH approached the Debtors and indicated that it was willing to enter into a global settlement of all pending issues, if the Debtors could persuade the Court to withhold ruling on the breach of contract claims during the negotiations.[2] The Debtors agreed, and requested that no ruling be issued pending approval of the global settlement. Unwisely, in hindsight, I acceded to the Debtors' request, a Settlement Agreement was approved paving the way for the joint plan of reorganization, and the DOH dodged the very severe punishment it deserved and was about to receive.

The Settlement Agreement and reorganization plan were predicated on the Debtors' transferring the hard operating assets of the Carolina Area Hospital exceeding 40 million dollars to the DOH. Section II(g) of the Agreement provided that the Debtors would own the Medicare receivables generated through the operation of the hospital *before* and until the hospital was transferred to the DOH, and it is undisputed that the effective date of the transfer was September 30, 1992. The Disclosure Statement mirrored the language of the

---

1. These bankruptcy cases were precipitated in July 1990, by HMCA (Carolina), Inc. and HMCA (PR), Inc., when the DOH improperly and unilaterally withheld millions of dollars from HMCA under its operating contract with HMCA, placing the hospitals in financial turmoil, and their patients in physical and medical jeopardy.

2. This well-timed overture was made only after a full evidentiary trial, with overwhelming proof of the DOH's misconduct, including damaging testimony by the prior Secretary of Health. With the Debtors seeking damages in the millions, and recognizing that it was clearly in trouble, DOH cleverly requested the "time out."

Settlement Agreement, and both documents provided for "the retention by the debtors of any assets, choses in action, and liability not mentioned above, incurred, obtained or arising out of the operation of the Carolina Area Hospital prior to the transfer of the Carolina Hospital to the Health Department, and the assumption by the Health Department of all assets and liabilities originating after the transfer of the Carolina Hospital." Disclosure Statement, at 20, ¶ 11.

After this plan was approved the Debtors paid all creditors in full, the case proceeded without major incident, and a final decree was entered in March 1996. About a year later, however, the Debtors informed the Court that they could not close the bankruptcy case because they were having difficulty obtaining their final Medicare receivable. On March 20, 1997, I issued an Order directing Medicare through the Health Care Financing Administration to complete its final computation of the receivable "and to make the payment of such sum directly to the debtor HMCA (Carolina), Inc., as soon as practicable." Order dated March 20, 1997, Docket No. 593, p. 2. I also stated that: "All parties should bear in mind that it is the intent of this Court to close this case as soon as possible, and that they should cooperate to achieve this end." *Id.*

Less than one month later, the DOH was once more caught interfering with the administration of the case. Instead of complying with the terms of the Settlement Agreement and the confirmed plan of reorganization, or seeking reconsideration or modification of our March 20, 1997 Order, the DOH again took matters into its own hands and, skirting the Court's authority over the subject, on April 10, 1997, sent an *ex parte* letter to the president of Cooperativa de Seguros de Vida ("COS-

VI"), Medicare's fiscal intermediary in Puerto Rico, objecting to the payment of the final Medicare payment to the Debtors. DOH's *ex parte* letter informed COSVI that "the Bankruptcy Court has indicated its interest in promptly closing this case and the object of [this] letter is the only matter which impedes the closing of the same. As a result, DOH wants to clarify the situation and prevent any improper payment be made to HMCA." *Ex parte* letter translation, at 1. The letter also threatened that if COSVI paid the Debtors, the DOH would "have to resort to the courts to recover said payment." Translation of *ex parte* letter, at 1.

When it sent the letter, the DOH did not disclose its action to either the Court or the Debtors, and its explanation for the action—that DOH's letter clearly indicates that its intent was to "ensure that the Settlement Agreement approved by this Court be adhered to by all parties," is probably the most ludicrous and/or disingenuous representation made to this court in a long time, and deserves no further comment.

Within a week after the Debtors alerted the Court to what the DOH was doing, the DOH filed its so-called "Medicare Motion," making a meritless claim to the receivable in question. The Debtors filed an opposition, and requested sanctions. On November 3, 1997, I ruled that the Medicare receivable clearly was property of the Debtors, denied DOH's motion, with prejudice, and ordered that the funds be paid to the Debtors forthwith. The DOH appealed that Order to the United States District Court for the District of Puerto Rico, and I withheld ruling on the Debtors' request for sanctions until DOH's appeal was decided. On March 24, 1999, sixteen wasted months later, because the DOH never bothered to file an appellate brief, the District Court dismissed the appeal and affirmed the No-

vember 3, 1997 Order.[3] Hearings were scheduled in Puerto Rico on March 18, 1998, and May 3, 2000, for the Debtors to present evidence in support of their request for punitive sanctions, but none was offered, and the hearing was concluded and taken under advisement.

## DISCUSSION

The Debtors want a ruling that the DOH is in contempt of an injunction issued on June 24, 1991, and/or that it violated Rule 9011, and they request "severe sanctions for the DOH's blatant transgressions." While it is highly likely that the requested relief would have been granted if properly supported, regretfully, I cannot grant the punitive relief sought by the Debtors, based on the record before me, and in light of the Debtors' failure to meet their burden on the subject.

### A. Contempt

In discussing a bankruptcy court's contempt powers the First Circuit has stated:

It is well-settled law that bankruptcy courts are vested with contempt power.... Bankruptcy rule 9020(b) specifically provides that a bankruptcy court may issue an order of contempt if proper notice of the procedures are given.

In deciding whether a proceeding before a lower court involves civil or criminal contempt, we are required to look to the purpose and character of the sanctions imposed, rather than to the label given to the proceeding by the court below....

Sanctions in a civil contempt proceeding are employed to coerce the defendant into compliance with the court's order or, where appropriate, to compensate the harmed party for losses sustained .... These sanctions are not punitive, but purely remedial.

*Eck v. Dodge Chemical Co. (In re Power Recovery Sys., Inc.)*, 950 F.2d 798, 802 (1st Cir.1991) (*emphasis added*), and "a complainant must prove civil contempt by clear and convincing evidence." *Langton v. Johnston,* 928 F.2d 1206, 1220 (1st Cir. 1991).

The respondents' actions herein generally sound like a party acting in bad faith, but unfortunately the record does not support the Debtors' request for punitive or criminal sanctions, which "are imposed for the purpose of vindicating the authority of the court.... The contemnor in a criminal contempt case is entitled to a hearing, proof beyond a reasonable doubt and all the protections afforded those accused of a crime." *Power Recovery Sys.*, 950 F.2d at 802, n. 18 (*citations omitted*). The Debtors have failed to support a claim for punitive sanctions, and without an evidentiary record, the Debtors have not even met the reduced burden for civil contempt in this matter. Therefore the only remedy left available to the Debtors is the relief afforded under Fed. R. Bankr.P. 9011.

### B. Rule 9011

Federal Rule of Bankruptcy Procedure 9011 was amended on December 1, 1997, to track the language of Rule 11 of the Federal Rules of Civil Procedure. The new rule governs "all proceedings in bankruptcy cases thereafter commenced and, insofar as just and practicable, all proceedings in bankruptcy cases then pending." See Supreme Court Order Amending Federal Rules of Bankruptcy Procedure (Apr. 11, 1997). Here, since the activity referenced in the Debtors' motion for sanctions occurred after the amendment, the current

---

**3.** The failure to prosecute its appeal just highlights how wilful and blatant were the DOH's efforts to hinder and delay. Its actions are bad faith personified.

version of Rule 9011 applies.[4] *See 680 Fifth Avenue Assocs. v. EGI Company Services, Inc. (In re 680 Fifth Avenue Assocs.),* 218 B.R. 305, 312–13 (Bankr. S.D.N.Y.1998)("The case law suggests that the propriety of sanctions should be gauged by the standard in effect at the time the alleged offensive conduct occurred.")

The applicable version of Rule 9011 states:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reason-

ably based on a lack of information or belief.

Fed. R. Bankr.P. 9011(b) (1997). In construing this Rule, courts have looked to cases involving Fed.R.Civ.P. 11, which remained substantively similar to our Bankruptcy Rule 9011, notwithstanding the December 1, 1993 amendments. *See In re Braun,* 152 B.R. 466, 471 n. 3 (N.D.Ohio 1993); *In re Remington Dev. Group, Inc.,* 168 B.R. 11, 15 (Bankr.D.R.I.1994). Both rules require attorneys "to conduct [themselves] in a manner bespeaking reasonable professionalism and consistent with the orderly functioning of the judicial system." *Figueroa–Rodriguez v. Lopez–Rivera,* 878 F.2d 1488, 1491 (1st Cir.1988), *aff'd in part* on rehearing *en banc,* 878 F.2d 1478 (1989) (applying prior version of Rule 11) (*quoting In re D.C. Sullivan Co.,* 843 F.2d 596, 598 (1st Cir.1988)).

The "appropriate standard for measuring whether a party and his or her attorney has responsibly initiated and/or litigated a cause of action in compliance with Rule 11 ... is an objective standard of reasonableness under the circumstances." *Cruz v. Savage,* 896 F.2d 626, 631 (1st Cir.1990) (applying prior version of Rule 11); *see also Plante v. Fleet Nat'l Bank,* 978 F.Supp. 59, 65–66 (D.R.I.1997); and subjective good faith is not enough to protect an attorney from sanctions under Rule 11. *Cruz,* 896 F.2d at 631. "A violation of Rule 11 ... might be caused by inexperience, incompetence, willfulness, or deliberate choice." *Id.*

In this case, the DOH and its attorneys violated Rule 9011(b) when the Medicare Motion was filed in the Spring of 1997

---

4. There are two major differences between the prior version and amended Rule 9011. First, under the amended rule, if the court finds a violation, the imposition of sanctions is not mandatory. *See* Fed. R. Bankr.P. 9011(c). Second, and while it is not applicable here, the amended rule contains a "safe harbor" provision allowing the offending party 21 days after receiving notice of the alleged violation to withdraw or correct the challenged document. *See* Fed. R. Bankr.P. 9011(c)(1)(A).

seeking to obtain property to which it clearly was not entitled. The DOH merely had to read its own Settlement Agreement to see that the funds in question were property of the Debtors. Instead, without making any sort of good faith inquiry, DOH ignored the facts, wilfully prosecuted a matter that from the outset was completely without merit,[5] forced the Debtors into needless litigation, and deprived them of the use of the Medicare receivables for several months. HMCA's statement that fees of $9,050 were incurred in opposing the frivolous DOH Medicare Motion is reasonable, and the DOH and its then counsel are jointly and severally ORDERED to pay this sum to the Debtors within ten (10) days.[6] *See* Fed. R. Bankr.P. 9011(c).

Finally, we address the DOH's sovereign immunity argument, which is every bit as lacking in merit as its other arguments. From the inception, this bankruptcy case has been all about the DOH, which was, of course, the centerpiece of the Chapter 11 plan. *See Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238 n. 1, 105 S.Ct. 3142, 87 L.Ed.2d 171, *reh'g denied,* 473 U.S. 926, 106 S.Ct. 18, 87 L.Ed.2d 696 (1985) ("We require an unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment."); *Paul N. Howard Co. v. Puerto Rico Aqueduct and Sewer Authority* 744 F.2d 880, 886 (1st Cir.1984) (Puerto Rico Aqueduct and Sewer Authority found

to have waived immunity by appearing in the case, filing a counter claim, and filing a third party complaint. The Court stated that: "it has long been established that a [state's] general appearance may constitute ... a waiver [of its Eleventh Amendment immunity]"), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 965, 83 L.Ed.2d 970 (1985). The DOH's presence in this case has been larger than life, and further discussion is unnecessary. If there was ever a case where waiver of sovereign immunity applied, this is it.[7]

Enter Judgment consistent with this order.

Dated at Providence, Rhode Island, this 27th day of September, 2001.

### *EXHIBIT B*

### *ORDER DENYING MOTION FOR RECONSIDERATION*

Before the Court is the motion of Jean Philip Gauthier, Esq., seeking reconsideration of this Court's Order imposing sanctions in the amount of $9,050 jointly and severally against the Puerto Rico Department of Health ("DOH") and its attorneys. Gauthier was legal counsel to the DOH when the sanctionable conduct occurred, and asks this Court to vacate the order as to him, arguing that he had no personal culpability in the matter.

Mr. Gauthier's argument completely sidesteps and/or misunderstands the issue with which this Court struggled in rendering its initial decision—i.e., the anonymity

---

**5.** On November 3, 1997, DOH's request was denied, with prejudice.

**6.** The Court is not privy to information as to whether DOH personnel or its then counsel were more at fault for generating and prosecuting the offending Medicare Motion. Therefore, initially at least, we leave the apportionment of this monetary sanction to the DOH and whoever its attorneys were at the time, because at this point they alone know

where the responsibility lies. If given proof on the subject, the Court would have imposed sanctions personally against named *individuals,* with instructions not to apply for reimbursement. Unfortunately, on this record I cannot do that.

**7.** Although "waiver" is probably the technically correct term of art in this case, "estoppel" is really more appropriate.

of the DOH insiders guilty of the offensive and sanctionable conduct, and the Court's inability to pierce that curtain of anonymity. The parties were given every opportunity, and in fact were urged (unsuccessfully) by the Court to submit evidence as to the identity of the actual offenders, so that they could be dealt with individually and appropriately, but none was forthcoming. Because it alone has the answer to the question, we left it to the DOH to identify internally the guilty actors, and to apportion the responsibility appropriately, among themselves. This Court is in no better position today to resolve the identity issue than it was in September 2001, and the DOH is still in the only position to do so. If accountability for such errant conduct could be avoided simply by engaging in the type of conspiracy of silence that we have here, the Court's authority, and indeed its duty, to control the behavior of litigants and their agents would be rendered meaningless. For these, and for reasons argued by the Debtor in its response, Document No. 657, which is adopted and incorporated herein by reference, reconsideration is DENIED.[1]

A report and affidavit of compliance with this Order shall be filed within 30 days. Implicit herein is the requirement that the guilty party(ies) pay the sanction(s) personally, and that they may not apply for reimbursement from the Commonwealth. To have any meaning, these sanctions must be paid by the wrongdoers, and not simply passed on to taxpayers. *See Williams v. Internal Revenue Service (In re Williams)*, 188 B.R. 721, 729–31 (Bankr. D.R.I.1995), *aff'd in part and vacated in part*, 215 B.R. 289 (D.R.I.1997).

Closure of this matter is long overdue, and the respondents are forewarned that further delay will likely result in the imposition of additional sanctions.

Dated at Providence, Rhode Island, this 25th day of February, 2002.

### EXHIBIT C

### ORDER TO SHOW CAUSE WHY THE PUERTO RICO DEPARTMENT OF HEALTH AND ITS AGENTS SHOULD NOT BE HELD IN CONTEMPT

On September 28, 2001, judgment entered in the amount of $9,050, jointly and severally, against the Puerto Rico Department of Health ("DOH"), and its attorneys and agents, pursuant to this Court's September 27, 2001, Opinion and Order Allowing Compensatory Sanctions.[1] Said Order is attached as Exhibit A. Thereafter, on his individual behalf, Jean Philip Gauthier, Esq., a DOH attorney, sought reconsideration of said Order on the ground that he was not personally culpable.[2] On Febru-

---

1. If as Gauthier contends, he knows he is innocent, then he also knows who is guilty. His identification of the DOH people who really deserve the sanctions would, of course, cure his alleged dilemma, but Mr. Gauthier has chosen not to do so.

1. Regrettably, in 20–20 hindsight, said Order also denied the Debtors' Request for Punitive Sanctions, but the DOH and its people seem determined to have that issue revisited.

2. The grounds alleged and argued by Mr. Gauthier strongly suggest that he either failed to read or completely misunderstood the part of the Order where we said:

The Court is not privy to information as to whether DOH personnel or its then counsel were more at fault for generating and prosecuting the offending Medicare Motion. Therefore, initially at least, we leave the apportionment of this monetary sanction to the DOH and whoever its attorneys were at the time, because at this point they alone know where the responsibility lies. If given proof on the subject, the Court would have imposed sanctions personally against named *individuals*, with instructions not to apply for reimbursement. Unfortunately, on this record I cannot do that. *See In re HMCA (Carolina), Inc.*, BK No. 90–23042,

ary 25, 2002, by separate Order, I denied Gauthier's Motion to Reconsider, and required that:

> A report and affidavit of compliance with this Order shall be filed within 30 days. Implicit herein is the requirement that the guilty party(ies) pay the sanction(s) personally, and that they may not apply for reimbursement from the Commonwealth. To have any meaning, these sanctions must be paid by the wrongdoers, and not simply passed on to taxpayers....
>
> Closure of this matter is long overdue, and the respondents are forewarned that further delay will likely result in the imposition of additional sanctions.

Order Denying Motion to Reconsider, February 25, 2002, Document No. 659, at 2–3 (citations omitted). Neither the September nor the February Orders were appealed, and they are final orders. To date, no report has been filed, the sanctions have not been paid, and the Respondents[3] continue to ignore their obligations to the Court.

In light of this, the Debtor filed a Motion for an Order to Show Cause and to impose additional sanctions against the Respondents for their failure to comply with this Court's prior orders. Because, even under the threat of additional sanctions the DOH and its agents and attorneys have ignored the prior orders of this Court, the Motion for Order to Show Cause is **GRANTED,** and the Respondents[4] are **ORDERED TO SHOW CAUSE, in writing** why they should not be held in further contempt, and why additional sanctions of $150 per day should not be imposed against them, jointly and severally, on account of their repeated failures to comply, and their refusal to file reports and affidavits, as ordered. In addition, the DOH is **ORDERED** to furnish a list of everyone who worked on this case between April 10, 1996 and today, together with a description of the services they performed. Responses to this Order to Show Cause shall be filed at the Bankruptcy Court in San Juan, Puerto Rico, on or before February 28, 2003, with copies faxed simultaneously to my Chambers at (401) 528–4089.

Dated at Providence, Rhode Island, this 12th day of February, 2003.

---

slip op. at 11, n. 6 (Bankr.D.P.R. September 27, 2001).

**3.** See attached service list. If there are other individuals involved, it is up to the present DOH insiders to make that disclosure.

**4.** It matters not that while the prior mischief was being committed, certain agents of the

DOH may no longer be with the Department. Such persons are responsible for their actions while employed by the DOH, and their obligation to the Court continues. Joining the list of responsible parties are any DOH newcomers who, by their current failure to respond *in any way,* are compounding the malfeasance of their predecessors.